**UNITED STATES of America, Plaintiff,**

**v.**

**Richard E. BEARD, Defendant.**

**No. IP 88–107–CR.**

United States District Court,
S.D. Indiana,
Indianapolis Division.

May 5, 1989.

---

Linda Chapman, Asst. U.S. Atty., Indianapolis, Ind., for plaintiff.

Linda L. Pence, Indianapolis, Ind., for defendant.

## ENTRY

BARKER, District Judge.

### I. *Background*

On September 28, 1988, the federal grand jury for the Southern District of Indiana returned a six count indictment against the defendant Richard Beard. That indictment alleged that, at all times relevant to the indictment, Mr. Beard was the Director of Real Estate for the Indiana University Foundation in Bloomington, Indiana. According to the indictment, the I.U. Foundation was an entity separate and distinct from Indiana University; pursuant to a contract with the University, however, the I.U. Foundation was empowered to enter into grants and contracts for the use and benefit of Indiana University and was obligated under the contract with the university trustees to supervise and handle administrative matters relating to such projects.

Count 1 of the indictment charges that, during his tenure as the Foundation's Director of Real Estate, Mr. Beard "willfully and knowingly convert[ed] to his own use monies of the United States ... in that he diverted to his own personal use approximately $27,000 in funds of the Indiana University Foundation, and retained those funds until October 12, 1983," all in violation of 18 U.S.C. § 641. Count 1 further states that these alleged conversions occurred "from on or before June 30, 1976, the exact date being unknown to the Grand Jury, and continu[ed] thereafter until October 12, 1983." Counts 2 through 6 of the indictment charge Mr. Beard with various violations of the federal mail fraud statute. 18 U.S.C. § 1341.

This matter is now before the court on the defendant's motion to dismiss Count 1 of the indictment. In his "Memorandum in Support of Motion to Dismiss," Mr. Beard mounts seven different attacks on the validity of Count 1. The defendant urges that: (1) Count 1 is legally insufficient because it fails to state the essential facts constituting the offense charged; (2) Count 1 is legally insufficient because it fails to specify under which paragraph of 18 U.S.C. § 641 it was brought; (3) Count 1 is duplicitous; (4) Count 1 is barred by the statute of limitations; (5) Count 1 should be dismissed because a criminal action for conversion cannot lie for the exercise of control over funds received as loans; (6) Count 1 should be dismissed because of the government's improper pre-indictment delay in its investigation and prosecution; and (7) this court lacks jurisdiction over Count 1 because the funds allegedly converted were not federal funds. The government filed its response on February 6, 1989, and the defendant filed his reply on February 27, 1989, and a supplemental memorandum on March 9, 1989.

### II. *The Impact of the Applicable Statute of Limitations*

Of the various arguments made by the defendant in support of his motion to dismiss, Mr. Beard relies most heavily on his contention that Count 1 of the indictment is barred by the applicable statute of limitations. Furthermore, several of the defendant's other arguments are most appropriately considered as subsidiary components of this statute of limitations issue. Therefore, the court turns first to the question whether Count 1 of the government's indictment of Mr. Beard can survive in light of the applicable statute of limitations.

The defendant contends—and the government apparently concedes, *see* Government's Response at 7–8—that the statute of limitations applicable to alleged violations of 18 U.S.C. § 641 is of five years in duration. *See* 18 U.S.C. § 3282 (providing that "[e]xcept as otherwise expressly provided by law, no person shall be prosecuted ... for any offense ... unless the indictment is found ... within five years next after such offense shall have been committed."). Based on this conten-

tion, the defendant's statute of limitations argument is relatively straightforward: "since the indictment was returned on September 28, 1988, it must charge a conversion occurring after September 28, 1983, in order to charge an indictable offense.... [the alleged conversions] at issue in this case were received by Mr. Beard from on or before 1976 until July, 1983.... Thus, the indictment was returned outside of the statute of limitations period." Defendant's Memorandum in Support of Motion to Dismiss Count 1 of the Indictment [hereinafter "Defendant's Brief"] at 15–16.

The government argues, however, that a violation of 18 U.S.C. § 641 is a "continuing offense" and that, therefore, "the statute of limitations did not begin to run ... until the defendant made arrangements to repay the converted funds, that is, when he ceased retaining the funds." Government's Response at 8. Because Mr. Beard is alleged to have retained the allegedly converted funds until October 12, 1983, concludes the government, the five year statute of limitations applicable to violations of 18 U.S.C. § 641 did not expire until October 12, 1988—a full two weeks after the return of Mr. Beard's indictment.

The defendant counters the government's reasoning with what amounts to a two-pronged argument. First, he contends that Count 1 is legally insufficient to charge a violation of 18 U.S.C. § 641, particularly because the count fails to specify under which paragraph of section 641 it was brought. Second, the defendant argues that, even if Count 1 were legally sufficient to allege a violation of either or both paragraphs of section 641, as a matter of law neither paragraph of section 641 can qualify as a "continuing offense." If the defendant were to prevail on the first prong of his argument, it would be unnecessary for the court to reach the secondary "continuing offense" issue—an issue of apparent first impression in the federal courts. Therefore, the court first addresses the threshold question of whether Count 1 is legally sufficient to charge a violation of either paragraph of 18 U.S.C. § 641.

## A. The Adequacy of Count 1 in Charging a Violation of 18 U.S.C. § 641

Section 641 in fact proscribes two separate and distinct types of conduct. In its relevant portion, the first paragraph of § 641 provides that:

> whoever embezzles, steals, purloins, or knowingly converts to his use ... any record, voucher, money, or thing of value of the United States or of any department or agency thereof ... [is guilty of a crime].

18 U.S.C. § 641. On the other hand, the second paragraph of section 641 provides that:

> whoever receives, conceals, or retains the same with intent to convert it to his use of gain, knowing it to have been embezzled, stolen, purloined or converted [is guilty of a crime].

*Id.* That is, while the first paragraph of § 641 prohibits certain acts of taking, the second paragraph is clearly aimed at the discrete act of receiving such taken property with the intent of converting that property to one's own use. *See Milanovich v. United States*, 365 U.S. 551, 554, 81 S.Ct. 728, 729, 5 L.Ed.2d 773 (1961) (noting that, in adding the second paragraph to § 641, "Congress was trying to reach a new group of wrongdoers, not to multiply the offense of the ... robbers themselves.")

Paragraph 6 of Count 1 is the only paragraph in the present indictment that alleges specific acts which might conceivably be construed as violations of section 641. In its entirety, that paragraph states:

> 6. From on or before June 30, 1976, the exact date being unknown to the Grand Jury, and continuing thereafter until October 12, 1983, in the Southern District of Indiana, RICHARD A. BEARD did willfully and knowingly convert to his own use monies of the United States, and various departments and agencies thereof, in that he diverted to his own personal use approximately $27,000.00 in funds of the Indiana University Foundation, and retained those funds until October 12, 1983. A portion of the funds were monies received as part of grants and

contracts made to the Indiana University Foundation by the various departments and agencies of the United States.

The foregoing is a violation of Title 18, United States Code, Section 641.

The defendant urges that this paragraph is inadequate to charge a violation of *either* paragraph of section 641; the government contends that this paragraph is adequate to charge the defendant with violating *both* paragraphs of section 641.

The defendant bases his contention that Count 1 is insufficient on two separate grounds. First, he asserts that Count 1 impermissibly fails to allege the essential facts constituting a violation of either paragraph of section 641. In particular, he points out that Count 1 lacks factual particularity about the number and dates of the alleged conversions and that the indictment language fails properly to place the alleged conversions within a concrete time frame. Because the charging language asserts that the conversions occurred "[F]rom on or before June 30, 1976, the exact date being unknown to the Grand Jury, and continuing thereafter until October 12, 1983," the defendant insists that the indictment effectively charges an offense covering a time period that ends on October 12, 1983, but stretches back in time indefinitely. Such a lack of a specific time frame for Mr. Beard's alleged crimes, urges the defendant, constitutes a failure of adequate notice under sixth amendment. Defendant's Brief at 9–10 (citing *United States v. Cecil*, 608 F.2d 1294 (9th Cir.1979); *United States v. Roman*, 728 F.2d 846 (7th Cir.1984)). Second, the defendant argues that, even if the indictment adequately alleged violations of both paragraphs of section 641, the indictment would be insuffi-

cient because it fails to specify under which paragraph Mr. Beard is charged.

The government responds by urging that the language of Count 1 is adequate to charge a violation of both paragraphs of section 641 and that the government is not required in its indictment to single out one paragraph at the expense of the other. *See* Government's Memorandum of Law at 1–6. The government contends that Count 1 is sufficient to charge a first paragraph violation because the critical language of Count 1 tracks the statutory language of the first paragraph—and "as a general proposition an indictment which is drafted in the language of the statute itself is sufficient." *Id.* at 2 (citing *United States v. Hinkle*, 637 F.2d 1154 (7th Cir.1981)). The government further argues that, although Count 1 tracks the language of the first paragraph, the count is also adequate to charge a violation of the second paragraph of section 641. The government states that Count 1 "alleges all of the elements of a violation of paragraph two of § 641. The elements of that offense are: (1) retaining money converted in violation of paragraph one, (2) with intent to convert it to his use or gain, and (3) knowing it to have been converted." *Id.* at 3. Finally, the government urges that "Count One of the Indictment can fairly be read to allege ... a violation of [either] paragraph 1 or 2 of 18 U.S.C. § 641" and that the government is under no duty to announce under which paragraph it is proceeding.[1]

■ The court finds that the language of Count 1 is adequate to charge a violation of the first paragraph of section 641. There are three elements required for a conviction of conversion under paragraph one of section 641: (1) a specific intent to (2) make a "knowing" conversion (3) of governmen-

---

1. Although (for reasons set out below) the court does not reach the question of whether a single count can properly charge a defendant with violating both paragraphs of section 641, the court notes that the government's argument on this point is, at least, logically inconsistent. Here, the government urges that Count 1 is not vague because it in fact charges a violation of *both* paragraphs of section 641. Later, however, the government argues that Count 1 is not duplicitous. *See* Government's Memorandum

of Law at 6–7. Yet, given that "[a] duplicitous count is one that charges more than one distinct and separate offense," *United States v. Berardi*, 675 F.2d 894, 897 (7th Cir.1982), and further given the government's assertion that the two paragraphs of "section 641 define[ ] two separate and distinct offenses," Government's Memorandum of Law at 1, it is unclear to the court how the government could have expected to prevail on both of its arguments.

tal property. *See Morissette v. United States,* 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288 (1952). It is clear that the indictments' assertion that Mr. Beard acted "willfully and knowingly" is sufficient to allege the first two of these elements. *See United States v. May,* 625 F.2d 186 (8th Cir.1980). Just as clearly, the third element is satisfied by Count 1's allegation that the converted property was "monies of the United States." Thus, Count 1 adequately charges Mr. Beard with a violation of paragraph one of section 641.[2] *See United States v. Hinkle,* 637 F.2d 1154, 1157 (7th Cir.1981) (noting that "[g]enerally, an indictment is sufficient when it sets forth the offense in the words of the statute itself, as long as those words expressly set forth all the elements necessary to constitute the offense intended to be punished.").

■ The court finds, however, that the language of Count 1 is inadequate to charge a violation of the second paragraph of section 641. The government concedes that two of the essential elements for a conviction under paragraph two are (1) retention of property converted in violation of paragraph one, (2) with intent to convert that property to the defendant's use or gain. *See* Government's Memorandum of Law at 3. Yet, Count 1 clearly alleges that Mr. Beard is *himself* the original converter (in violation of paragraph one). Thus, it is logically impossible for the indictment to charge that Mr. Beard retained that same property with the requisite intent to convert it *again.* As is addressed more thoroughly below in the discussion about whether section 641 states a "continuing offense," once a conversion occurs it is complete. Therefore, Mr. Beard cannot be both a person who has *already* converted government monies and a person who is retaining those same monies with the *intent* to convert them in the future. The two crimes are mutually exclusive: under paragraph one the defendant has already performed the conversion; under paragraph two, the conversion is to occur in the

future. This partition between the two paragraphs of section 641 is not surprising in light of the court's previous observation that the second paragraph of section 641 was added to reach "a new group of wrongdoers, not to multiply the offense" of the original embezzler or thief. *Milanovich v. United States,* 365 U.S. 551, 554, 81 S.Ct. 728, 729, 5 L.Ed.2d 773 (1961). Therefore, because the indictment fails to allege that Mr. Beard received or retained any converted property from anyone else (or even that Mr. Beard originally obtained possession of the property without intent to convert and *later* retained that property with the requisite intent to convert), the court finds that Count 1 does not properly charge Mr. Beard with a violation of paragraph two of section 641.

Because the court has determined that Count 1 only charges the defendant with a violation of paragraph one, it is unnecessary for the court to reach the issue of whether the count is legally insufficient because it fails to specify under which paragraph of section 641 it was brought. Instead, the court can turn directly to the question of whether the paragraph one crime of conversion qualifies as a "continuing offense."

**B. Whether Conversion Qualifies as a Continuing Offense for Statute of Limitations Purposes**

The defendant urges that, even if Count 1 adequately charges the crime of conversion under section 641, such a charge is barred by the applicable five-year statute of limitations. The government counters this argument by contending that conversion is a "continuing offense" and that, therefore, the statute of limitations did not begin running until the defendant ceased retaining the converted funds. Because the defendant did not cease retaining the funds until October 12, 1983, concludes the government, an indictment returned on September 28, 1988, was well within the limitations period.

2. The defendant's argument that Count 1 impermissibly leaves open the date that Mr. Beard's conversions were alleged to have begun is mooted by this court's ruling on the statute of limita-

tions issue. *See* § II(B), "Whether Conversion Can Qualify As A Continuing Offense For Statute Of Limitations Purposes," *infra.*

■ The general rule is that a criminal offense is completed and the limitations period begins to run when each element of that offense has occurred. Those crimes labeled as continuing offenses, however, function as exceptions to this general rule. *See United States v. Del Percio,* 657 F.Supp. 849, 852 (W.D.Mich.1987), *aff'd in part and rev'd in part,* 870 F.2d 1090 (6 Cir.1989). No reported cases have expressly addressed the question of whether conversion under paragraph one of section 641 is a continuing offense.[3] The Supreme Court has made it clear, however, that there are only two instances when a court can find that a crime qualifies as a continuing offense: (1) when "the explicit language of the substantive criminal statute compels such a conclusion;" and (2) when "the nature of the crime involved is such that Congress must assuredly have intended that it be treated as a continuing one." *Toussie v. United States,* 397 U.S. 112, 90 S.Ct. 858, 25 L.Ed.2d 156 (1970). Furthermore, the Court has made it equally clear that the continuing offense exception must be interpreted narrowly: a statute of limitations is designed "to limit exposure to criminal prosecution to a certain fixed period of time following the occurrence of those acts the legislature has intended to punish." *Id.* at 114, 90 S.Ct. at 860. Thus, the Court has declared "that criminal limitations statutes are to be liberally construed in favor of repose." *Id.* at 115, 90 S.Ct. at 860. *See also,* 18 U.S.C. § 3282 (mandating that the limitations period should not be longer than five years "[e]xcept as otherwise expressly provided by law.").

■ The court finds that there is nothing in the explicit language of the first paragraph of section 641 that would compel the conclusion that Congress extended the limitations period for the crime of conversion. Indeed, section 641 does not even mention the statute of limitations, much less when the limitations period begins to run. By contrast, Congress has provided in 18 U.S.C. § 3284 that concealment of a bankrupt's assets "shall be deemed to be a continuing offense ... and the period of limitations shall not begin to run until such final discharge or denial of discharge." *See also* the Foreign Agents Registration Act, 22 U.S.C. § 618(e) (providing that "failure to file any such [foreign] registration statement or supplements thereto as is required by [this title] shall be considered a continuing offense for as long as such failure exists, notwithstanding any statute of limitations or other statute to the contrary", *quoted in United States v. Del Percio,* 870 F.2d 1090, 1096 (6 Cir.1989)). Because Congress has not included such explicit continuing offense language in section 641, the court concludes that the first prong of the *Toussie* test is not met by section 641. The government apparently concedes this point and instead argues under the second prong of *Toussie* that the nature of the crime of conversion is such that Congress must "assuredly" have intended it to be treated as a continuing offense. Analogizing the defendant's crime to "joyriding," the government argues:

> The classic example of conversion is joyriding. An individual appropriates the automobile of another, drives it for a few days, and then abandons it near where he found it. The joyrider had no intent to steal, to permanently deprive the owner of his car, merely to use it for a while.... In essence, the Defendant was joyriding with the [I.U. Foundation's] money. The joyride did not end until he made arrangements to repay the money. He retained thousands of dollars in money of the United States until that date, and he could legally be prosecuted for conversion within five years.

Government's Memorandum of Law at 11–12.

---

3. A number of cases have considered whether concealing or retaining property in violation of paragraph *two* of section 641 is a continuing offense. *See, e.g., United States v. Bauer,* 713 F.2d 71 (4th Cir.1983); *United States v. Frezzo,* 659 F.Supp. 54 (E.D.Pa.1987); *United States v.*

*Fleetwood,* 489 F.Supp. 129 (D.Or.1980). However, in light of this court's prior determination that the first two paragraphs of section 641 state "two separate and distinct" crimes, these cases are without significant precedential value to the case at bar.

The fundamental flaw with the government's argument is that retention of the converted property is not in any way an element or part of the crime of conversion. Conversion is simply the wrongful assumption and exercise of control over another's property. *See Black's Law Dictionary* 402 (4th ed. 1968) (citing authority). What the converter intends to do (or in fact does) with the converted property is irrelevant: the act of "conversion" is completed upon the initial interference with the owner's interest. Thus, the court finds that there is nothing in the nature of the crime of conversion which would indicate that Congress must have silently intended that it be treated as a continuing offense.

The court further finds that such an interpretation of "conversion" is consistent with the *Toussie* mandate that criminal statutes "be liberally construed in favor of repose." Indeed, very few crimes have been found to be impliedly continuing under the second prong of *Toussie. See, e.g., United States v. Garcia*, 854 F.2d 340 (9th Cir.1988) (finding that the nature of the crime of kidnapping, proscribed by 18 U.S.C. § 1201(a), implied that Congress intended it to be a continuing offense). Likewise the limitation rules applicable to civil conversion cases support the finding that conversion is not a continuing offense. *See Newberg v. Federal Sav. & Loan Ins. Corp.*, 317 F.Supp. 1104, 1106 (N.D.Ill. 1970) (finding that the plaintiff's "contention that the statute of limitations has not yet run, because defendants allegedly continue to withhold the [converted] assets ..., is without merit.... Indeed, to so hold would render the [statute of limitations] provisions ... meaningless and of no effect in a great number of cases.") *See also United Missouri Bank South v. United States*, 423 F.Supp. 571 (W.D.Mo.1976). Finally, additional support for the court's conclusion is found in state criminal conversion cases. *See, e.g., State v. King*, 282 So.2d 162 (Fla.1973) (finding that the crime of larceny, which includes the element of conversion, was completed upon the taking).

For all of these reasons the court finds that the crime of conversion, proscribed by the first paragraph of section 641, is *not* a "continuing offense" and that the five-year statute of limitations set out in 18 U.S.C. § 3282 begins running at the time the actual conversion is accomplished, not upon the date the converter ceases to exercise control over the money or property in question. This finding has two immediate consequences for the case at bar. First, the court necessarily GRANTS the defendant's pending motion to strike as surplusage the allegation in paragraph six of Count 1 that Mr. Beard "retained those funds until October 12, 1983." This statement is irrelevant to the crime charged and is potentially prejudicial to the defendant. *See* Rule 7(d) Fed.R.Crim.P. Second, the defendant's motion to dismiss Count 1 must be granted to the extent that that count attempts to indict Mr. Beard for acts of conversion that were completed more than five years before the date of the indictment. Therefore, in order to charge an indictable offense, Count 1 must charge a conversion occurring on or after September 28, 1983. According to the defendant the alleged conversions "at issue in this case were received by Mr. Beard from on or before 1976 until July 1983.... Thus, the indictment was returned outside of the statute of limitations period." Defendant's Brief at 15–16. However, it is not entirely clear from the face of the indictment precisely when the last alleged conversion supposedly occurred. Therefore, the court has reconsidered its February 27, 1989, denial of the defendant's motion for a bill of particulars and, pursuant to Rule 7(f) of the Federal Rules of Criminal Procedure, hereby ORDERS the government to file a bill of particulars indicating whether any of the alleged conversions complained of in Count 1 occurred on or after September 28, 1983. Such a bill of particulars must be filed within seven (7) days of the date of this entry. If the government fails to respond, or if its response indicates that none of Mr. Beard's alleged conversions occurred on or after September 28, 1983, Count 1 of the complaint will be dismissed in its entirety. If the government's response indicates that an indictable conversion occurred on or af-

ter September 28, 1983, the court will then address the remaining arguments made by the defendant in support of his motion to dismiss Count 1.

It is so ORDERED.