## PEOPLE v ARTMAN

Docket No. 168170. Submitted April 3, 1996, at Detroit. Decided August 13, 1996, at 9:00 A.M.

Jean D. Artman pleaded nolo contendere in the Recorder's Court for the City of Detroit, Isidore B. Torres, J., to a charge of attempted embezzlement by an agent of over $100 and was sentenced to one to five years' imprisonment. As part of the plea agreement, the defendant reserved her right to appeal the trial court's ruling that the determination whether the period of limitation had expired was a question for the jury. The defendant appealed.

The Court of Appeals *held*:

1. The trial court properly ruled that the issue whether the period of limitation had expired was a jury question. Factual disputes involving a statute of limitations issue arising under MCL 767.24; MSA 28.964 should be submitted to the jury.

2. The defendant's assertion that there was no issue of fact regarding whether the period of limitation expired in September 1985 is without merit. The prosecution did not attempt to use a taking that occurred before April 22, 1986, and bring it within the statute of limitations as a continuing offense that extended beyond that date and did not proceed under a continuing offense theory. Instead, the prosecutor argued that each conversion by the defendant constituted a separate embezzlement. The prosecution of the defendant for embezzlement was not barred by the statute of limitations.

3. The imposition of the criminal sanction in this case after the defendant's license to practice law was revoked on the basis of the embezzlement involved here did not violate the prohibition against double jeopardy in either the federal or state constitution.

Affirmed.

1. LIMITATION OF ACTIONS — CRIMINAL LAW — FACTUAL DISPUTES — JURY QUESTIONS.

Factual disputes involving a statute of limitations issue arising under MCL 767.24; MSA 28.964 should be submitted to a jury.

2. EMBEZZLEMENT — INTENT TO DEFRAUD.

One of the two distinct forms of embezzlement recognized under MCL 750.174; MSA 28.371 occurs when an individual fraudulently disposes of or converts to the individual's own use money or personal property of the individual's principal; in such a case, the requisite intent to defraud must exist at the time of the conversion or appropriation of the property to the defendant's own use; an agent's or trustee's failure to pay over or refund to the principal money or property entrusted to the agent's or trustee's care upon demand is prima facie proof of an intent to embezzle, but such matters as a refusal to pay at a time provided by contract or on demand are only circumstances bearing on an intent to embezzle; the mere failure to pay over monies belonging to another, without fraudulent intent, is not embezzlement.

3. CONSTITUTIONAL LAW — DOUBLE JEOPARDY.

Although successive or multiple punishments are prohibited by the constitutional prohibition against double jeopardy, a defendant still may be subject to both criminal and civil sanctions for the same act where the civil penalty does not constitute a punishment; a civil penalty can rise to the level of punishment if the total penalty is disproportionate to the offense committed; the basic test for determining whether the multiple punishment component of the Double Jeopardy Clause has been violated rests on principles of legislative intent (US Const, Am V; Const 1963, art 1, § 15).

4. CONSTITUTIONAL LAW — DOUBLE JEOPARDY — ATTORNEY DISCIPLINE PROCEEDINGS.

Attorney discipline proceedings are civil in nature; their purpose is to protect the public, the courts, and the legal profession, not to punish for wrongdoing; therefore, the imposition of criminal sanctions on an attorney after the attorney has been disbarred on the basis of the same conduct supporting the imposition of the criminal sanctions does not violate the prohibition against double jeopardy in either the federal or state constitution (US Const, Am V; Const 1963, art 1, § 15).

*Frank J. Kelley*, Attorney General, *Thomas L. Casey*, Solicitor General, *John D. O'Hair*, Prosecuting Attorney, *Timothy A. Baughman*, Chief of Research, Training, and Appeals, and *Jeffrey Caminsky*, Assistant Prosecuting Attorney, for the people.

State Appellate Defender (by *Anne Yantus*), for the defendant on appeal.

Before: CAVANAGH, P.J., and MARILYN KELLY and J. R. JOHNSON,* JJ.

PER CURIAM. Defendant pleaded nolo contendere to a charge of attempted embezzlement by an agent of over \$100, MCL 750.92; MSA 28.287, MCL 750.174; MSA 28.371. The trial court sentenced defendant to one to five years' imprisonment. Defendant appeals as of right, and we affirm.

In 1984, Ethel Scarborough was awarded approximately \$219,000 after the settlement of a wrongful death lawsuit. In June of that year, defendant, who was Scarborough's attorney, deposited the money in a client trust account pending the resolution of a probate matter. Defendant also placed monies belonging to other clients in the account.

The probate matter was concluded in September 1985 after this Court denied leave to appeal in the case. However, defendant did not disburse the funds to Scarborough at that time. Defendant made mortgage payments on behalf of Scarborough from the trust account, totaling approximately \$20,000, from 1985 through 1990. From 1985 to 1991, defendant apparently also transferred money from the trust account into her own account. Defendant sent letters to Scarborough in 1987 and 1988 claiming that final release of the funds was being delayed by a "higher court." In 1991, the client trust account was closed because of a lack of funds.

---

* Circuit judge, sitting on the Court of Appeals by assignment.

On April 22, 1992, a warrant was issued for defendant's arrest on a charge of embezzlement by an agent of over $100. Defendant waived preliminary examination. Defendant subsequently filed a motion to dismiss the charge, claiming that the six-year period of limitation had expired. Defendant argued that the act of embezzlement occurred when she failed to distribute the trust funds in September 1985. The trial court ruled that the statute of limitations issue was a jury question and denied defendant's motion.

On June 8, 1993, defendant pleaded nolo contendere to a charge of attempted embezzlement by an agent of over $100. In exchange for the plea, the original charge of embezzlement by an agent of over $100 was dismissed. As part of the plea agreement, defendant reserved her right to appeal the trial court's ruling regarding the statute of limitations issue.

I

Defendant argues that the trial court erred in ruling that whether the statute of limitations barred this prosecution was a jury question. This is a question of law that we review de novo on appeal. *People v Nance*, 214 Mich App 257, 258; 542 NW2d 358 (1995).

Questions of law in criminal cases are for the determination of the court, whereas questions of fact are for the jury. Otherwise stated, the resolution of conflicts in the evidence is a matter lying within the province of the jury. *People v Wright*, 161 Mich App 682, 685; 411 NW2d 826 (1987). Factual disputes involving a statute of limitations issue arising under MCL 767.24; MSA 28.964 are properly submitted to a jury. *Wright, supra* at 685.

The parties agree that the question of when an offense occurred is one of fact for the jury when the facts are in material dispute. Defendant argues, however, that there is no factual dispute in this case because both parties agree regarding the dates that money was deposited and withdrawn from the trust account. The only point debated by the parties was when the statutory crime of embezzlement occurred.

We conclude that the trial court did not err in ruling that the issue whether the period of limitation had expired was a jury question. Even though the parties did not dispute the factual question of when the appeal ended in the underlying probate matter or the factual information regarding defendant's bank accounts, defendant has not shown that the only conclusion that can be drawn from those facts is that the embezzlement occurred before April 22, 1986.

II

Defendant also argues that the trial court erred in denying her motion to dismiss because the prosecution was barred by the statute of limitations. Defendant maintains that the offense date should be September 1985, or at least no later than April 21, 1986, when the balance of the account was approximately $102,000.

The prosecutor argues that holding money in a trust account, even past the time when the client should presumably receive the funds, is not in itself a conversion or theft. Instead, the act of embezzlement in this case occurred when defendant transferred money from the trust account to other accounts. The prosecutor contends that as of April 22, 1986, the trust account still held approximately half of Scarbor-

ough's money and that the acts of embezzlement for which defendant was prosecuted were transactions that occurred after that date.

There are two distinct forms of embezzlement recognized under MCL 750.174; MSA 28.371. The first occurs when an individual fraudulently disposes of or converts to his own use money or personal property of his principal. The second occurs when an individual conceals with intent to convert to his own use money or personal property without the consent of the principal. *People v Wood*, 182 Mich App 50, 53; 451 NW2d 563 (1990).

In the present case, the charge is based on the former. Accordingly, the requisite intent to defraud must exist at the time of the conversion or appropriation of the property to defendant's own use. *Id.* The embezzlement statute specifically provides that an agent's or trustee's failure to pay over or refund to his principal money or property entrusted to his care upon demand shall be prima facie proof of an intent to embezzle. However, such matters as a refusal to pay at a time provided by contract or on demand are only circumstances bearing on an intent to embezzle. *People v Jones*, 182 Mich App 668, 670-671; 453 NW2d 293 (1990). The mere failure to pay over monies belonging to another, without fraudulent intent, is not embezzlement. *People v Douglass*, 293 Mich 388, 391; 292 NW 341 (1940).

Thus, the mere fact that defendant did not give the trust funds to Scarborough in September 1985 does not establish fraudulent intent on the part of defendant. Rather, that fact is merely one factor to be considered in determining defendant's intent. Therefore, defendant's assertion that there is no issue of fact

regarding whether the period of limitation expired in September 1985 is without merit.

We now turn our attention to whether there was a factual dispute regarding the question whether all of Scarborough's funds were converted to defendant's use before April 22, 1986. According to the exhibits provided by the parties, at least $219,000 belonging to Scarborough was placed in a client trust account in 1985. In 1985, defendant made mortgage payments in excess of $5000 on behalf of Scarborough. The balance in the trust account remained above $200,000 until April 16, 1986, when $105,000 was transferred to defendant's business checking account. There were no additional transactions before April 22, 1986. The balance in the account was still over $100,000 when defendant again began making mortgage payments on behalf of Scarborough in August 1986. In September 1986, defendant began transferring the funds in the trust account to other accounts.

Defendant argues that reversal is required because the crime in this case should not be treated as a continuing offense. In support of her argument, defendant cites *United States v Beard*, 713 F Supp 285 (SD Ind, 1989).[1] Defendant notes that no Michigan court

---

[1] In *Beard*, a federal conversion charge under 18 USC 641 was filed against the defendant. The charge was based on conversions that occurred on or before June 30, 1976, and continued until October 12, 1983. *Beard, supra* at 286. The district court noted that the statute prohibited both the taking of the property and the receiving, concealing, or retention of it with intent to convert it. Because the charge was based only on the taking prohibition of the statute, the statute did not contain any explicit language providing that it was to be a continuous offense, and the nature of the crime did not indicate that Congress must assuredly have intended that it be treated as a continuing offense, the court concluded that the offense was not a continuous one. Therefore, the period of limitation began to run when the actual conversion was completed. *Id.* at 290-291.

has addressed this issue and urges this Court to hold that embezzlement is not a continuing offense. We decline to address this question, however, because the prosecutor is not proceeding under a continuing offense theory. The prosecutor is not attempting to use a taking that occurred before April 22, 1986, and to bring it within the statute of limitations as a continuing offense that extended beyond that date. Rather, the prosecutor is arguing that each act of conversion constitutes a separate embezzlement.[2]

Defendant also argues that this Court should, as a matter of law, adopt a "first in-first out" method of analyzing her bank account activity. Under this approach, defendant suggests that this Court should find that she took the money deposited into the trust account in 1984 and used it to cover shortages for other clients before April 22, 1986. If the transactions are not considered on a "first in-first out" basis, defendant asserts that any attempt to determine which funds were withdrawn at any given time becomes purely arbitrary.

We reject defendant's argument. The question in this case is not what type of accounting method should be adopted for commingled trust funds. Rather, the pertinent issue is what defendant's specific practice was with respect to the trust account. Because defendant made mortgage payments on Scarborough's behalf after April 22, 1986, it is clear that defendant was not following a "first in-first out" method of accounting with respect to the commingled trust funds.

---

[2] In fact, defendant concedes in her appellate brief that any conversion that occurred after April 22, 1986, would constitute a second and separate conversion upon which a conviction could be supported.

In sum, we find that the prosecution of defendant for embezzlement was not barred by the statute of limitations.

III

Next, defendant argues that the federal and state double jeopardy prohibitions preclude prosecution because she was previously subjected to punishment for the same offense in the form of disbarment by the attorney disciplinary board. Despite her plea, defendant did not waive her right to present the double jeopardy claim to this Court. *People v White*, 212 Mich App 298, 305; 536 NW2d 876 (1995). A double jeopardy issue constitutes a question of law that is reviewed de novo on appeal. *People v Lugo*, 214 Mich App 699, 705; 542 NW2d 921 (1995).

Defendant did not raise this issue in the trial court. However, because this issue involves an important constitutional claim, we will nevertheless address it. *People v Heim*, 206 Mich App 439, 441; 522 NW2d 675 (1994).[3]

Both the federal and state constitutions prohibit placing a person twice in jeopardy for a single offense. US Const, Am V; Const 1963, art 1, § 15; *People v Spicer*, 216 Mich App 270, 272; 548 NW2d 245 (1996). In support of her contention that prosecution was precluded because she previously had been subject to punishment for the same offense in the form

---

[3] The one prerequisite to having a new issue accepted for appellate review is that there be a sufficient record to decide the question. *People v Snow*, 386 Mich 586, 591; 194 NW2d 314 (1972). Although the record in this case contains little factual development with regard to the disbarment, the parties do not dispute that defendant was disbarred in 1992, before her plea and the imposition of a prison sentence, for reasons related to this case.

of disbarment, defendant cites *Dep't of Revenue of Montana v Kurth Ranch*, 511 US ___; 114 S Ct 1937; 128 L Ed 2d 767 (1994), and *United States v Halper*, 490 US 435; 109 S Ct 1892; 104 L Ed 2d 487 (1989). In *Kurth Ranch*, the Supreme Court found that Montana's assessment of a tax on the possession and storage of dangerous drugs, in proceedings separate from state criminal prosecutions of drug charges, violated the Fifth Amendment's double jeopardy protections. *Kurth Ranch*, 511 US ___; 128 L Ed 2d 780. In *Halper*, the Supreme Court unanimously held that the disparity between a fine of $130,000 under the False Claims Act, 18 USC 287, and the government's actual losses of approximately $16,000 was sufficiently disproportionate that the sanction constituted a second punishment in violation of the Double Jeopardy Clause. *Halper, supra* at 452.

While successive or multiple punishments are prohibited by the Fifth Amendment, a defendant may still be subjected to both criminal and civil sanctions for the same act. *Id.* at 440. Under some circumstances, however, a civil penalty may constitute "punishment" for the purpose of the Double Jeopardy Clause. *Id.* at 448. Both a criminal and a civil penalty may be imposed, but the labels "criminal" and "civil" are not important for purposes of a double jeopardy analysis. Rather, the Supreme Court has explained:

> [T]he determination whether a given civil sanction constitutes punishment in the relevant sense requires a particularized assessment of the penalty imposed and the purposes that the penalty may fairly be said to serve. Simply put, a civil as well as a criminal sanction constitutes punishment when the sanction as applied in the individual case serves the goals of punishment. [*Halper, supra* at 448.]

More recently, the Supreme Court addressed whether in rem civil forfeitures constitute "punishment" for purposes of the Double Jeopardy Clause in *United States v Ursery*, 518 US ___; 116 S Ct 2135; 135 L Ed 2d 549 (1996). In holding that the forfeitures at issue did not violate the Double Jeopardy Clause, the Court noted that the statutes on which they are based "serve important nonpunitive goals." *Id.*, 518 US ___; 135 L Ed 2d 569.

The essence of the holdings in *Kurth Ranch* and *Halper* is that a civil penalty can rise to the level of punishment if the total penalty is disproportionate to the offense committed. *People v Hellis*, 211 Mich App 634, 644; 536 NW2d 587 (1995). Moreover, under *Ursery*, the constitutional provision against double jeopardy is not violated when a civil penalty serves a purpose distinct from any punitive purpose. The basic test for determining whether the multiple punishment component of the Double Jeopardy Clause has been violated rests on principles of legislative intent. *People v Vaughn*, 447 Mich 217, 250, n 7; 524 NW2d 217 (1994) (Bᴏʏʟᴇ, J.).

The Legislature has declared attorney disciplinary proceedings to be civil in nature and has authorized the Supreme Court to adopt rules and regulations concerning the discipline, suspension, and disbarment of members of the State Bar of Michigan for misconduct. See MCL 600.904; MSA 27A.904, MCL 600.910; MSA 27A.910. The purpose of disciplinary proceedings, by rule, is not to punish for wrongdoing, but to protect the public, the courts, and the legal profession. MCR 9.105.

As applied to the facts of this case, we conclude that the sanction of disbarment is not excessive in

relationship to its nonpunitive purpose. Rather, disbarment is reasonably related to the goals of protecting the public, the courts, and the legal profession. We note that before *Halper*, this Court rejected the notion that proceedings for license revocations are criminal proceedings that trigger constitutional double jeopardy protections. See *Thangavelu v Dep't of Licensing & Regulation*, 149 Mich App 546, 555-556; 386 NW2d 584 (1986). We therefore find that the imposition of a criminal sanction after defendant's disbarment does not violate the prohibition against double jeopardy of either the federal or state constitution.

Affirmed.