NOT DESIGNATED FOR PUBLICATION

No. 117,474

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

CODY JAMES TORBOL,
*Appellant*.

MEMORANDUM OPINION

Appeal from Riley District Court; MERYL D. WILSON, judge. Opinion filed July 27, 2018. Affirmed.

*Peter Maharry*, of Kansas Appellate Defender Office, for appellant.

*Kendra Lewison*, assistant county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before HILL, P.J., PIERRON and MALONE, JJ.

PER CURIAM: A jury convicted Cody James Torbol of aggravated criminal sodomy and acquitted him of aggravated indecent liberties with a child. The district court sentenced him to 221 months in the department of corrections with 36 months of postrelease supervision.

Torbol contends the district court violated his constitutional right to a jury trial by including the victim's year of birth in the elements instructions given to the jury. He argues the court erred by making the factual finding that the statute of limitations had

been tolled rather that submitting the issue to the jury. He asserts the court abused its discretion by denying his request for a psychological evaluation of the victim. We affirm.

In June 2015, F.P. disclosed to her cousin that Torbol, her uncle, had forced her to perform oral sex on him when she was four or five years old. Her cousin told F.P. she needed to tell her mother but agreed to wait until F.P. was ready. However, after about a month, the cousin informed Mother and F.P.'s stepfather about the allegations. Mother called the Junction City Police Department to report the allegations. However, because the incident had occurred in Manhattan, Mother was advised to take F.P. to the Riley County Police Department to make a report.

On July 6, 2015, Officer Matt Pfrang of the Riley County Police Department interviewed Mother. Because F.P. was uncomfortable revealing some of the details of the incident to a man, she wrote the details of the incident for Officer Pfrang.

F.P. alleged that when she was four or five years old, Torbol, who was 15 years old, had stayed at her house for a few nights. She asked Torbol to play house. Mother was home at the time. F.P. and Torbol went to her bedroom and Torbol closed the bedroom door, pulled his pants down, and pulled her onto the bed. He pulled on her shoulder and put his penis into her mouth. After a couple of minutes, she heard the door open and he stopped. She did not know who opened the door because nobody entered the room.

A couple of days after this incident, F.P. and Torbol were lying on the couch watching television. Mother saw Torbol rubbing the upper part of F.P.'s inner thigh. Mother testified the way he rubbed F.P.'s thigh was inappropriate, and Torbol moved his hand as soon as he saw Mother. Mother quickly put F.P. to bed in Mother's room, locked the door, and went outside to call her father to have him pick up Torbol. At the time, Stepfather was at the National Training Center in Ft. Irwin, California; Mother called to inform him of the situation. He testified he was at the training center in September and

2

October 2007. Although F.P. did not remember her address at the time of the incident, she remembered the details of her bedroom in which the sexual assault occurred. Stepfather confirmed the bedroom F.P. described was in the house they rented in Manhattan from March 2007 until February 2008.

Although the incident had occurred nearly eight years before her disclosure, F.P. thought Mother knew because she thought Mother had been the person who opened her bedroom door during the first incident. At the time it occurred, F.P. did not understand that Torbol's conduct constituted a crime. She only realized it was criminal after she was in fourth or fifth grade and began watching crime shows with Mother.

Because Torbol was 15 years old when the offense occurred, the State originally charged him as a juvenile. On January 28, 2016, the district court certified him to stand trial as an adult. The State charged Torbol, as an adult, with one count of aggravated criminal sodomy for the incident in F.P.'s bedroom and one count of aggravated indecent liberties with a child for the incident on the couch.

In July 2016, Torbol filed a motion to release F.P.'s mental health and school records to challenge her credibility. He also moved to compel an expert psychological examination of F.P. based on the delay between the incident and F.P.'s report of the crime. He pointed to F.P.'s inconsistent statements asserting that she had told Mother approximately one year after the incident that she had never been sexually abused. Following the motions hearing, the district court found that nothing in the motion or the arguments in the hearing met the criteria for ordering a psychological evaluation. The court noted that Torbol could address any changes in F.P.'s story in cross-examination, but there was no indication they were rooted in psychological issues.

The district court ordered all of F.P.s' mental health records to be sealed and sent directly to the court for an in camera inspection. After an inspection, the court would

3

make appropriate terms of disclosure. Although the court denied Torbol's motion, it agreed to revisit the issue if warranted by information in F.P.'s mental health records. After inspecting the records, the court determined there was nothing in the records that Torbol could use to challenge F.P.'s credibility.

The case went to jury trial. After the State rested on the second day of trial, Torbol moved for a directed verdict arguing the State failed to meet its burden of proof for both counts. He moved to dismiss based on the five-year statute of limitations for the allegations. He argued the State had failed to present sufficient evidence of tolling, so the statute of limitations had expired. The district court denied the motion for a directed verdict, finding the State had presented sufficient evidence to establish the crimes. The court denied the statute of limitations motion, finding the evidence showed F.P. was four or five years old when the offense occurred, and she did not understand the conduct was illegal until she was in fourth or fifth grade. According to the court, only after F.P. understood the criminal nature of Torbol's alleged actions did the statute of limitations commence for the prosecution.

The jury found Torbol guilty of aggravated criminal sodomy and not guilty of aggravated indecent liberties with a child. The court sentenced Torbol to the mitigated gridbox sentence, 221 months, because he was a juvenile when he committed the offense.

Although Torbol drafted a notice of appeal the day after sentencing, it was not filed because of administrative error. Torbol learned of the error on March 13, 2017, and immediately moved to file the notice of appeal out of time. The district court allowed the notice of appeal to be filed beyond the 14-day deadline.

On appeal, Torbol alleges the district court violated his right to a jury trial by including F.P.'s year of birth in the jury instructions and by making the factual

determination that the statute of limitations had not expired. He also asserts the district court abused its discretion by denying his motion for a psychological evaluation of F.P.

*Jury Instructions*

Torbol contends that the district court violated his right to trial by an impartial jury as provided in the Sixth Amendment of the United States Constitution. He asserts by including F.P.'s year of birth in the jury instructions, the district court directed a verdict about an element of the offense in violation of his constitutional right to have the jury decide all elements. The sixth jury instruction listed the elements required to find Torbol guilty of aggravated criminal sodomy. The instruction included the statement that "[t]he defendant engaged in sodomy with [F.P.] (YOB: 2002)." Neither party objected to the instructions during the jury instruction conference.

When reviewing challenges to jury instructions, we follow a four-step analysis:

"(1) First, the appellate court should consider the reviewability of the issue from both jurisdiction and preservation viewpoints, exercising an unlimited standard of review; (2) next, the court should use an unlimited review to determine whether the instruction was legally appropriate; (3) then, the court should determine whether there was sufficient evidence, viewed in the light most favorable to the defendant or the requesting party, that would have supported the instruction; and (4) finally, if the district court erred, the appellate court must determine whether the error was harmless, utilizing the test and degree of certainty set forth in *State v. Ward*, 292 Kan. 541, 256 P.3d 801 (2011), *cert. denied* 565 U.S. 1221 (2012). [Citation omitted.]" *State v. Fisher*, 304 Kan. 242, 256-57, 373 P.3d 781 (2016).

Torbol failed to object to the instruction. If a party fails to object to an instruction, this court evaluates whether the instruction was a clear error. *State v. Betancourt*, 299 Kan. 131, 135, 322 P.3d 353 (2014). To establish clear error, "'the defendant must firmly convince the appellate court that the giving of the instruction would have made a

5

difference in the verdict.' [Citation omitted.]" *State v. Cooper*, 303 Kan. 764, 771, 366 P.3d 232 (2016). The "clearly erroneous" principle is not a standard of review; rather, it supplies a basis for determining if an error requires reversal of a conviction. *State v. Williams*, 295 Kan. 506, 510-11, 286 P.3d 195 (2012).

The second step of the analysis is satisfied as the State concedes that including F.P.'s year of birth in the jury instruction was error. When an error infringes on a party's federal constitutional right, a court will declare a constitutional error harmless only when the party benefiting from the error persuades the court "beyond a reasonable doubt that the error complained of will not or did not affect the outcome of the trial in light of the entire record, *i.e.*, proves there is no reasonable possibility that the error affected the verdict." *Ward*, 292 Kan. at 569 (citing *Chapman v. California*, 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705, *reh. denied* 386 U.S. 987 [1967]).

Therefore, when reviewing whether the error was clearly erroneous, we will determine whether the State provided sufficient evidence of F.P.'s year of birth or if omitting it could have reasonably affected the verdict.

Although Torbol refers to the clear error standard, he contends the jury instruction was a structural error requiring automatic reversal. "Structural error only occurs in very limited circumstances where errors 'defy analysis by "harmless-error" standards' because they 'affect[ ] the framework within which the trial proceeds.'" *Boldridge v. State*, 289 Kan. 618, 627, 215 P.3d 585 (2009) (citing *Arizona v. Fulminante*, 499 U.S. 279, 309-10, 111 S. Ct. 1246, 113 L. Ed. 2d 302 [1991]). Such errors are so intrinsically harmful they require automatic reversal, disregarding the effect the error had on the verdict. *State v. Johnson*, 53 Kan. App. 2d 734, 736, 391 P.3d 711 (2017), *rev. granted* September 29, 2017 (citing *State v. Hill*, 271 Kan. 929, 934, 26 P.3d 1267 [2001], *abrogated on other grounds by State v. Voyles*, 284 Kan. 239, 252-53, 160 P.3d 794 [2007]).

"Errors which have been found to be structural include the complete denial of the right to counsel, the denial of the right to public trial, and the denial of the right to trial by jury. *Boldridge*, 289 Kan. at 627-28. But other errors of constitutional magnitude are simply errors in the trial process itself and are thus subject to harmless error analysis. *Fulminante*, 499 U.S. at 310." *State v. Dunlap*, 46 Kan. App. 2d 924, 936, 266 P.3d 1242 (2011).

The United States Supreme Court has concluded that the harmless error analysis is not appropriate when the error "'vitiates *all* the jury's findings,'" and produces "'consequences that are necessarily unquantifiable and indeterminate.'" *Neder v. United States*, 527 U.S. 1, 11, 119 S. Ct. 1827, 144 L. Ed. 2d 35 (1999) (citing *Sullivan v. Louisiana*, 508 U.S. 275, 113 S. Ct. 2078, 124 L. Ed. 2d 182 [1993]). In *Neder*, the Supreme Court found that omitting an element in a jury instruction was not prejudicial so long as the prosecution presented overwhelming evidence of the missing element and the defense conceded its proof. 527 U.S. at 9-10. The Kansas Supreme Court has held that omitting an element from an instruction is analogous to improperly instructing the jury that an element was conclusively presumed. *State v. Daniels*, 278 Kan. 53, 61, 91 P.3d 1147 (2004). The court applied the constitutional harmless error test, determining "'whether the record contains evidence that could rationally lead to a contrary finding with respect to the omitted element.'" 278 Kan. at 62 (quoting *Neder*, 527 U.S. at 19). If not, the court may hold the error harmless. 278 Kan. at 62.

Here, the instruction that included F.P.'s year of birth was not prejudicial for a variety of reasons. The State had produced overwhelming evidence of her year of birth, and Torbol conceded the fact during the trial. During the State's case in chief, three witnesses testified that F.P. was born in 2002. Torbol's witness, a therapist at Pawnee Mental Health, testified that she provided therapy to F.P. when she was seven years old, in 2009 and 2010. Angela Swank, another therapist at Pawnee Mental Health, confirmed that F.P. was born in 2002 during Torbol's direct examination of her. Torbol did not contest F.P.'s birth year and presented that fact in his defense evidence. Because both

parties asserted F.P. was born in 2002, the fact was uncontroverted. The jury instruction was not prejudicial and did not preclude the jury from making findings on the elements of the offense. The constitutional harmless error analysis is appropriate. The record contains no evidence that could rationally lead to a contrary finding as to F.P.'s year of birth. Therefore, the error was harmless.

*Statute of Limitations*

Torbol contends the district court violated his Sixth Amendment right to a jury trial by making the findings of fact necessary to toll the statute of limitations. He asserts this fact-finding was within the province of the jury. He asserts the court erred in making such findings because under *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory minimum must be submitted to a jury and proved beyond a reasonable doubt." He claims that without the court's fact-finding, the State could not have proceeded with prosecution and he would not have been subject to any punishment. As a result, the court's fact-finding increased his maximum punishment from nothing to the severe punishment imposed.

Appellate review of whether the statute of limitations bars prosecution is subject to unlimited review. *State v. Meza*, 38 Kan. App. 2d 245, 247, 165 P.3d 298 (2007). We review a district court's findings of fact on statute of limitations for substantial competent evidence. See *State v. Haskins*, 262 Kan. 728, 731, 942 P.2d 16 (1997). Substantial evidence is evidence that a reasonable person could accept as adequate to support a conclusion. *State v. Mattox*, 305 Kan. 1015, 1035, 390 P.3d 514 (2017).

After the State rested its case in chief and the district court excused the jury for the day, Torbol moved for dismissal based on the statute of limitations. He alleged the statute of limitations had run before the State filed charges in 2015. The court found that the

State had presented undisputed evidence that F.P. was four or five years old at the time of the offense. The court further found that F.P. did not understand Torbol's conduct was illegal until she was in the fourth or fifth grade. The court determined the statute of limitations tolled under K.S.A. 21-3106(5)(f)(i) and (ii). Those provisions state:

> "(5) The period within which a prosecution must be commenced shall not include any period in which:
>
> . . . .
>
> (f) whether or not the fact of the crime is concealed by the active act or conduct of the accused, there is substantially competent evidence to believe two or more of the following factors are present:
>
> > (i) The victim was a child under 15 years of age at the time of the crime;
> >
> > (ii) the victim was of such age or intelligence that the victim was unable to determine that the acts constituted a crime[.]"

As a result, the statute of limitations began to run at the time F.P. became aware of the criminal nature of Torbol's conduct. This awareness became apparent in 2010.

Torbol contends the district court violated his Sixth Amendment right to a jury trial by stepping into the jury's province by making factual findings when determining that the statute of limitations had been tolled. The Sixth Amendment protects a defendant's right to a speedy and public trial by an impartial jury.

> "This right, in conjunction with the Due Process Clause, requires that each element of a crime be proved to a jury beyond a reasonable doubt. In *Apprendi*, this Court held that any fact that 'expose[s] the defendant to a greater punishment than that authorized by the jury's guilty verdict' is an 'element' that must be submitted to a jury. [Citation omitted.]" *Hurst v. Florida*, 577 U.S. ___, 136 S. Ct. 616, 621, 193 L. Ed. 2d 504 (2016).

Although Torbol contends that permitting prosecution to proceed increased his possible punishment from 0 to more than 221 months, he misinterprets "statutory

9

maximum" in *Apprendi*. Supreme Court precedent shows the "'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." *Blakely v. Washington*, 542 U.S. 296, 303, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004) (quoting *Ring v. Arizona*, 536 U.S. 584, 602, 122 S. Ct. 2428, 153 L. Ed. 2d 556 [2002]). "When a finding of fact alters the legally prescribed punishment so as to aggravate it, the fact necessarily forms a constituent part of a new offense and must be submitted to the jury." *Alleyne v. United States*, 570 U.S. 99, 114-15, 133 S. Ct. 2151, 186 L. Ed. 2d 314 (2013). When a fact increases the maximum punishment allowed at sentencing, it is essentially an element of an aggravated crime, and the court must submit the fact to the jury to be found beyond a reasonable doubt in reaching its verdict. 570 U.S. at 116.

The rationale behind *Apprendi* is that a court violates a defendant's constitutional right to a jury trial when it invades the jury's province by finding additional facts *at sentencing*. *State v. Dickey*, 301 Kan. 1018, 1036, 350 P.3d 1054 (2015) (citing *Shepard v. United States*, 544 U.S. 13, 25, 125 S. Ct. 1254, 161 L. Ed. 2d 205 [2005] [plurality opinion]). Finding that the statute of limitations had been tolled merely permitted prosecution, enabling the jury to address whether the State has proven the crime's elements. The court may then consider only the elements determined by the jury in sentencing. These circumstances therefore do not raise an *Apprendi* issue.

In support of Torbol's claim, he cites cases from New Jersey, Michigan, and Pennsylvania where courts have held that any fact-finding regarding the statute of limitations was in the jury's province. Even so, the facts of those cases are distinguishable from the facts here and they are not persuasive. In *State v. Meltzer*, 239 N.J. Super. 110, 118, 570 A.2d 1042 (1989), the court held it was up to the jury to determine whether the statute of limitations was tolled when the parties presented conflicting evidence. But the court held that with undisputed evidence, it was a matter of law for the court to determine. In *People v. Artman*, 218 Mich. App. 236, 239, 553 N.W.2d 673 (1996), the

10

court held matters involving conflicting evidence as to tolling was a matter for the jury. In *Artman*, the parties relied on bank records for the embezzlement dates and additional evidence was necessary to determine which dates related to the offense. In *Commonwealth v. Groff*, 378 Pa. Super. 353, 372, 548 A.2d 1237 (1988), the court held factual disputes of whether the offense occurred within the statute of limitations was in the province of the jury.

These cases use the same principle as used in Kansas: questions of law are for the court's determination and questions of fact are submitted to the jury. See *State v. Reed*, 302 Kan. 390, 399, 352 P.3d 1043 (2015); *State v. Johnson*, 293 Kan. 1, 4, 259 P.3d 719 (2011); *State v. Allen*, 49 Kan. App. 2d 162, 176, 305 P.3d 702 (2013); *State v. Hinchsliff*, No. 103,608, 2011 WL 4031502, at *3-7 (Kan. App. 2011) (unpublished opinion) (whether statute of limitations was tolled under the facts of case was legal question resolved by the court). We note that the statute of limitations issue is being raised for the first time on appeal and is not properly preserved, but we are addressing the issue because it is a question of law based on admitted facts, as asserted in the appellant's brief.

Here, unlike *Meltzer*, Torbol did not controvert the evidence presented in support of tolling the statute of limitations. He merely claimed the State failed to present sufficient evidence. Unlike *Artman*, the district court here did not require the defense to present evidence about the offense date and the defense did not propose to have any evidence countering that which the State presented in support of tolling the time. Unlike in *Groff*, the parties did not dispute the date range provided and the dates did not span in and out of the statute of limitations. Additionally, in *Artman* and *Groff*, the prosecution did not argue the statute of limitations had tolled even though there was uncertainty in the offense dates and a real possibility that the charges were untimely. In this case, however, the date range in the complaint is wholly outside the statute of limitations, requiring the statute of limitations to be tolled for the charges to have been timely. The cases cited

11

required a jury to resolve a dispute of facts, while, here, the only dispute was whether the State presented sufficient evidence allowing tolling under the applicable statute. The State's evidence was uncontroverted. Thus, even if we found the out-of-state cases persuasive, they do not apply to the situation here.

Torbol claims the evidence used in the district court's finding was insufficient, but he failed to dispute the facts. Under K.S.A. 21-3106(5)(f)(i) and (ii), the time to commence prosecution is tolled if the State presents substantial competent evidence that the victim was under the age of 15 at the time of the offense and the victim did not understand that the conduct was criminal. "It is a general rule of law that uncontroverted evidence which is not improbable or unreasonable cannot be disregarded by the trial court unless it is shown to be untrustworthy, and such uncontroverted evidence should ordinarily be regarded as conclusive." *D.M. Ward Const. Co., Inc. v. Electric Corp. of Kansas City*, 15 Kan. App. 2d 114, Syl. ¶ 6, 803 P.2d 593 (1990). As addressed above, F.P.'s year of birth had been established through multiple State's witnesses. The State presented sufficient evidence that she was under the age of 15 at the time of the offense. As for K.S.A. 21-3106(5)(f)(ii), F.P. testified she did not know Torbol's conduct was criminal until she began watching crime shows in fourth or fifth grade. It is neither improbable nor unreasonable that F.P. did not understand Torbol's conduct was criminal until she was in fourth or fifth grade. Substantial competent evidence exists as Torbol did not controvert the evidence presented.

*Psychological Evaluation*

Torbol moved for an independent psychological evaluation of F.P. based on the delay between the offense and the disclosure as well as inconsistent statements by F.P. He claims the district court abused its discretion by denying his motion and because the evaluation was integral to his theory of defense, the error could not be held as harmless.

12

Appellate courts review a district court's decision whether to grant a psychiatric evaluation of the victim for an abuse of discretion. *State v. McCune*, 299 Kan. 1216, 1230, 330 P.3d 1107 (2014). A judicial action constitutes an abuse of discretion if (1) no reasonable person would take the view adopted by the trial court; (2) it is based on an error of law; or (3) it is based on an error of fact. *State v. Marshall*, 303 Kan. 438, 445, 362 P.3d 587 (2015).

Under *State v. Gregg*, 226 Kan. 481, 489, 602 P.2d 85 (1979), district courts were granted the discretion to order psychiatric evaluations of sex crime victims for compelling reasons. The *Gregg* court provided a nonexclusive list of factors for courts to consider, including: (1) whether there was any evidence corroborating the victim's version of events; (2) whether the victim demonstrated mental instability; (3) whether the victim demonstrated a lack of veracity; (4) whether the victim had falsely accused another of similar offenses; (5) whether the defendant's motion for a psychological evaluation seemed to be a fishing expedition; and (6) whether the victim understood the meaning of telling the truth. *State v. Berriozabal*, 291 Kan. 568, 581, 243 P.3d 352 (2010) (citing *Gregg*, 226 Kan. at 490).

Torbol contends that instead of reviewing for an abuse of discretion, we should review the issue as a constitutional issue based on the denial restricting him from presenting his theory of defense. We will first analyze the issue under the *Gregg* factors with an abuse of discretion standard, then review it as a constitutional issue.

Because Torbol does not contend the district court based its decision on an error of law or fact, he likely intended this court review it as a view that no reasonable person could have adopted.

13

Gregg *Factors*

In his motion, Torbol reasoned that an evaluation was necessary to determine whether F.P.'s mental or emotional condition had affected her veracity. He relied on the nonexclusivity of the *Gregg* factors, as courts may consider "any other [compelling] reason." His asserted the length of time between the offense and disclosure as well as F.P.'s inconsistent statements presented compelling reasons to warrant an evaluation. Torbol contends that without an evaluation, he could not know if F.P. had made false allegations previously, there were concerns about her veracity, or if she was mentally stable.

In denying the motion, the district court stated that permitting evaluations on the hope that something would be discovered would permit evaluations in every case, contrary to the intentions of the *Gregg* court. The court ordered F.P.'s mental health records from Pawnee Mental Health Center and conducted an in camera inspection with the understanding that, if the records revealed any information warranting a psychological evaluation, it would revisit the issue. However, following its inspection, the court found that the records contained no information that Torbol could use to challenge F.P.'s credibility.

Torbol's assertion that an evaluation was necessary to determine whether evidence existed to warrant an evaluation is precisely the fishing expedition courts are to prevent. In *Gregg*, the court described the request based on the victim's young age and lack of corroborating testimony as "a fishing expedition embarked upon in the hope of something damaging and admissible in the trial would be unearthed." 226 Kan. at 490. Torbol makes essentially the same argument here. He provided no evidence to support his request. The district court did not err by denying the motion as Torbol failed to provide any compelling reasons to warrant a psychological evaluation.

14

Gregg *Concerns*

Torbol relies on the sympathy of this court by complaining he faced a lengthy sentence at the hands of a young child. Gregg also argued concerns of the power a young child had on his future. As with *Gregg*, the claim presents no compelling rationale and only aims to discredit young victims solely because of their ages. In *Gregg*, the court relied heavily on the California Supreme Court decision in *Ballard v. Superior Court of San Diego Cty.*, 64 Cal. 2d 159, 410 P.2d 838 (1966). The *Ballard* court based its determination on the explanations of prominent psychiatrists that

> "a woman or a girl may falsely accuse a person of a sex crime as a result of a mental condition that transforms into fantasy a wishful biological urge. Such a charge may likewise flow from an aggressive tendency directed to the person accused or from a childish desire for notoriety." 64 Cal. 2d at 172.

With a showing of compelling reasons, the California Supreme Court granted district courts discretion to order psychological evaluations of sex crime victims even though it had rejected psychiatric testimony to impeach witnesses in nonsex crime cases. 64 Cal. 2d at 172.

Also of concern is the belief of the *Gregg* court that

> "'a believable complaining witness, who suffers from an emotional condition inducing her belief that she has been subjected to a sexual offense, may charge some male with that offense. Thus, the testimony of a sympathy-arousing child may lead to the conviction of an unattractive defendant, subjecting him to a lengthy prison term.'" 226 Kan. at 488 (quoting *Ballard*, 64 Cal. 2d at 172).

The decision in *Ballard* was legislatively overruled in 1980, the year after the Kansas Supreme Court extensively quoted it in the *Gregg* decision.

15

"Notwithstanding the provisions of subdivision (d) of Section 28 of Article I of the California Constitution, the trial court shall not order any prosecuting witness, complaining witness, or any other witness, or victim in any sexual assault prosecution to submit to a psychiatric or psychological examination for the purpose of assessing his or her credibility." Cal. Penal Code § 1112.

In arguing against the evaluation, the State pointed out that the idea that courts should subject sexual assault victims to such evaluations was based on an outdated case and outdated thinking. This proposition is supported by Justice Moritz' dissenting opinion in *State v. Simpson*, 299 Kan. 990, 998, 327 P.3d 460 (2014), in which she wrote, "the basis for [the Kansas Supreme Court's] decision in *Gregg* is unsound, based not on statute or the Constitution but on misogynistic and out-dated notions." As noted by Justice Moritz, defendants can challenge each of the *Gregg* factors without a court-ordered evaluation and jurors should already be considering each factor when making credibility determinations. 299 Kan. at 999. We are not swayed that courts should subject young victims of sex crimes to mental health evaluations merely because the offense committed against them carries a severe penalty.

Torbol contends that through a psychological evaluation, information integral to his defense could have been obtained. "A defendant is entitled to present his or her theory of defense. The exclusion of relevant, admissible, and noncumulative evidence, which is an integral part of the theory of defense, violates the defendant's fundamental right to a fair trial." *State v. Baker*, 281 Kan. 997, 1008, 135 P.3d 1098 (2006). In reviewing a challenge to the admission of evidence, we first consider whether the evidence was relevant evidence that tends to prove any material fact. 281 Kan. at 1008.

Torbol's assertion fails because there is a lack of evidence rather than an exclusion of evidence as required in *Baker*. In this argument, he sidesteps his burden of proof for

16

the evaluation and jumps to a violation of his constitutional rights. Had he upheld his evidentiary standard, the district court would have ordered a psychological evaluation. The court even offered to revisit the issue after reviewing F.P.'s mental health records. After the court provided Torbol a copy of F.P.'s mental health records, he did not renew his request for an evaluation. Torbol's argument failed because it centered on a lack of proof of F.P.'s credibility rather than showing that compelling reasons existed to doubt her credibility. The district court did not prevent him from presenting a defense; it prevented his request made in hopes that a defense would be discovered.

Affirmed.