*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

DARNELL WALKER,

        Defendant-Appellant.

UNPUBLISHED
May 19, 2022

No. 355259
Ingham Circuit Court
LC No. 19-000189-FH

Before: LETICA, P.J., and MARKEY and O'BRIEN, JJ.

PER CURIAM.

Following a jury trial, defendant appeals as of right his convictions for possession with intent to deliver methamphetamine, MCL 333.7401(2)(b)(*i*), possession of less than 25 grams of cocaine, MCL 333.7403(2)(a)(*v*), possession of less than 25 grams of heroin, MCL 333.7403(2)(a)(*v*), carrying a concealed weapon (CCW), MCL 750.227, felon in possession of a firearm, MCL 750.224f, and possession of a firearm during the commission of a felony (felony-firearm), MCL 705.227b. The trial court sentenced defendant as a fourth-felony offender, MCL 769.12, to concurrent prison terms of 78 to 480 months for possession with intent to deliver methamphetamine, 60 to 240 months for felon-in-possession and CCW, and 24 to 180 months for possession of cocaine and possession of heroin, with the felon-in-possession sentence to be served consecutively to defendant's two-year sentence for felony-firearm, and all of defendant's sentences be served consecutively under MCL 768.7a(2) given his parolee status at the time he committed these offenses. We affirm.

Defendant's convictions arise from the discovery of drugs and a firearm in a vehicle he was driving. The trial court denied defendant's pretrial motion to suppress the evidence discovered after the initial traffic stop. Following defendant's convictions, the trial court also denied his motions for a new trial. Defendant now appeals, raising issues in a brief filed by appointed appellate counsel and also in a pro se brief filed pursuant to Supreme Court Administrative Order No. 2004-6, Standard 4 (Standard 4 brief).

## I. SEARCH OF DEFENDANT'S VEHICLE

Defendant argues through both appellate counsel and in his Standard 4 brief that the trial court erred by denying his pretrial motion to suppress the evidence.[1] We disagree.

This Court reviews a trial court's findings of fact in a suppression hearing for clear error, but reviews its ultimate decision de novo. *People v Anthony*, 327 Mich App 24, 31; 932 NW2d 202 (2019). "A finding of fact is clearly erroneous if, after a review of the entire record, we are left with a definite and firm conviction that a mistake has been made." *Id*. (quotation marks and citation omitted). We review de novo, as a question of law, whether the Fourth Amendment was violated. *Id*.

Ingham County Sheriff Deputy Nathan Olson testified that on March 1, 2019, at approximately 2:33 a.m., he saw a Chevrolet Impala traveling northbound on Aurelius Road. The vehicle's license plate light was inoperable. After Deputy Olson caught up to the vehicle, he "ran a query" on the license plate through the Law Enforcement Information Network (LEIN) system and learned that the vehicle had been reported as stolen. Therefore, he initiated a traffic stop, both because the license plate light was out and because of the information that the vehicle was stolen. Defendant, the sole occupant of the vehicle, said that the vehicle belonged to his girlfriend, Beverly Hicks, and that he was coming from her house. After defendant gave the key to Deputy Olson at his request, Deputy Olson returned to his vehicle and contacted the dispatch LEIN operator, who confirmed that the vehicle had been reported stolen. Deputy Olson handcuffed defendant and placed him in his patrol car.

After other officers arrived at the scene, they searched the vehicle. They found a plastic grocery bag on the floor near the rear passenger side seat that contained 35 "bindles of suspected heroin" wrapped in lottery tickets.[2] An additional black duffel bag was found on the back seat, behind the driver's seat. The bag contained men's clothing, a handgun with a loaded extended magazine, and a bag containing a substance that field tested positive for methamphetamine. As the officers found these items, they placed them on the vehicle's trunk, in view of defendant.

Defendant complained that he was having chest pains, so Deputy Olson called for an ambulance, which transported defendant to the hospital. There, a nurse discovered a bag concealed underneath defendant's underwear, near his groin, which contained both heroin and cocaine.

With respect to the initial traffic stop, in *People v Campbell*, 329 Mich App 185, 196; 942 NW2d 51 (2019), this Court explained:

---

[1] Defense trial counsel filed an interlocutory challenge to the trial court's decision, which this Court denied for failure to persuade it of the need for immediate appellate review. *People v Walker*, unpublished order of the Court of Appeals, entered September 10, 2020 (Docket No. 353867).

[2] At trial, Deputy Olson further testified that the bag also contained cut-up lottery tickets, baggies, a scale, a spoon, a plate, and cutting agents.

The Fourth Amendment protects against unlawful searches and seizures. A seizure within the meaning of the Fourth Amendment occurs when, in view of all the circumstances, a reasonable person would conclude that he or she was not free to leave. A traffic stop amounts to a seizure under the Fourth Amendment, and it is justified if the officer has an articulable and reasonable suspicion that a vehicle or one of its occupants is subject to seizure for a violation of law. Whether a reasonable suspicion justifies a traffic stop depends on a commonsense view of the totality of the circumstances. An officer's conclusion must be drawn from reasonable inferences based on the facts in light of his training and experience. [Quotations and citations omitted.]

Deputy Olson's initial investigation was prompted by the defective license plate light. Defendant does not challenge the determination that an unlit license place is a vehicle violation.[3] Once Deputy Olson ran the plate number and was informed that the vehicle had been reported as stolen, he had a reasonable and articulable basis for believing that the automobile was stolen, which provided a basis for detaining defendant. See *People v Mazzie*, 326 Mich App 279, 297; 926 NW2d 359 (2018) (holding that information obtained from the LEIN system that a vehicle was not insured provided a police officer with reasonable suspicion to initiate a traffic stop); *People v Barbarich*, 291 Mich App 468, 473; 807 NW2d 56 (2011) (explaining that "if a police officer has a reasonable, articulable suspicion to believe a person has committed or is committing a crime given the totality of the circumstances, the officer may briefly stop that person for further investigation."). After stopping defendant, Deputy Olsen demanded the key to the Impala to briefly investigate the basis for the stop, at which time he contacted the dispatch operator, who confirmed the accuracy of the information that the car had been reported as stolen. The initial traffic stop and defendant's detention at that point was valid. And upon confirming that the vehicle had been stolen, Deputy Olsen had probable cause to arrest defendant.

Defendant argues that the trial court erred by ruling that he did not have standing to challenge the subsequent search of the car and the contents because the vehicle was stolen. We disagree. Constitutional protections are personal and alleged invasions of the rights of others cannot be asserted vicariously. *United States v Salvucci*, 448 US 83, 95; 100 S Ct 2547; 65 L Ed 2d 619 (1980); *People v Wood*, 447 Mich 80, 89; 523 NW2d 477 (1994); *People v Zahn*, 234 Mich App 438, 446; 594 NW2d 120 (1999). "For example, a defendant cannot assert a claim for

---

[3] MCL 257.686(2) provides:

> Either a tail lamp or a separate lamp shall be constructed and placed so as to illuminate with a white light the rear registration plate and render it clearly legible from a distance of 50 feet to the rear. A tail lamp or tail lamps, together with any separate lamp for illuminating the rear registration plate, shall be wired so as to be lighted whenever the head lamps or auxiliary driving lamps are lighted.

A police officer, who has reasonable grounds to suspect a violation, is authorized to stop such a motor vehicle and inspect it. If he finds a violation, he may issue the driver a citation as one violates the statutory equipment requirements "is responsible for a civil infraction." MCL 257.683(2) and (6).

suppression on the basis of unlawful invasion of the person or property of a third party." *Wood*, 447 Mich at 89. A person has standing to assert a constitutional violation if he had a reasonable expectation of privacy, in light of all the surrounding circumstances, in the area or object of the intrusion. *People v Smith*, 420 Mich 1, 27; 360 NW2d 841 (1984) (quotation marks and citations omitted). However, the expectation of privacy must be legitimate and one that society is prepared to recognize as reasonable. *People v Lombardo*, 216 Mich App 500, 504-505; 549 NW2d 596 (1996). In that regard, "a person present in a stolen automobile at the time of the search may not object to the lawfulness of the search of the automobile. No matter the degree of possession or control, the car thief would not have a reasonable expectation of privacy in a stolen car." *Byrd v United States*, ___ US ___, ___; 138 S Ct 1518, 1529; 200 L Ed 2d 805 (2018) (quotation marks, alternation marks, and citation omitted).

Deputy Olson testified that when he "ran" the Impala's license plate through the LEIN system, the system reported that the vehicle had been stolen. He also testified that he confirmed with the LEIN operator that the Impala had been reported as stolen. Defendant complains that Deputy Olson did not call Hicks to determine whether the car was actually stolen, but he presents no authority for the proposition that Deputy Olson was required to do so.[4] More significantly, to the extent that defendant takes the position that the vehicle was not actually stolen, it was incumbent upon defendant to present evidence to factually support that position. Defendant did not present any evidence—by testimony, affidavit, or otherwise—to factually support any claim that he had permission to use the car. He did not, for example, present testimony or an affidavit from Beverly Hicks stating either that defendant did not steal the car or that she did not report it stolen. It was defendant's responsibility to establish the predicate facts to show that he has standing to challenge the search. See *People v Earl*, 297 Mich App 104, 107; 822 NW2d 271 (2012) ("[T]o attack the propriety of a search and seizure, the defendant must first establish that he or she has standing to challenge the search."), aff'd 495 Mich 33 (2014), overruled in part on other grounds in *People v White*, 501 Mich 160, 164 n 2 (2017).

Also, it is immaterial whether defendant was charged with stealing the automobile. A "prosecutor has broad discretion in determining which charges to bring against a defendant," *People v Williams*, 186 Mich App 606, 609; 465 NW2d 376 (1990), and the mere fact that the prosecutor may not have charged defendant with any crime involving a stolen vehicle is not evidence that the vehicle was not, in fact, stolen.[5] Considering the undisputed evidence that the vehicle did not belong to defendant, that the vehicle had been reported as stolen, and that defendant

---

[4] On the second day of trial, the prosecutor represented that on January 29, 2019, Ms. Hicks reported to the Lansing Police Department (LPD) that defendant had feloniously assaulted her along with two others. On February 5, 2019, defendant took Ms. Hicks' vehicle and refused to return it. Ms. Hicks reported that as well. On February 22, 2019, the Ingham County Prosecutor's Office authorized charging defendant with three counts of felonious assault, MCL 750.82, and one count of unlawfully driving away an automobile (UDAA), MCL 750.414. Due to the police report, the vehicle was entered in LEIN as stolen. It remained in LEIN until March 1, 2019, when Deputy Olson stopped defendant. In response, defense trial counsel represented that these charges were dismissed, which the prosecutor did not contest.

[5] Plaintiff asserts that defendant was separately charged in another case with the theft of the Impala.

did not present any evidence indicating that he had permission to drive the vehicle, the trial court did not clearly err by finding that the vehicle was stolen, and therefore, defendant had no reasonable expectation of privacy in the vehicle and lacked standing to challenge the search of its contents.

Also of relevance with respect to the search of the plastic bag containing the heroin packets and scale, or the duffel bag containing the firearm and methamphetamine, an individual can have a reasonable expectation of privacy in personal effects, even when one does not have such an expectation of privacy in a vehicle as a whole. *People v Mead*, 503 Mich 205, 214; 931 NW2d 557 (2019). In *Mead*, our Supreme Court held that the passenger in an automobile had a legitimate expectation of privacy in a backpack he held on his lap. This holding was premised in part, however, on the facts that the defendant was a passenger in a car that had been pulled over only for an expired plate and that "the record establishe[d] that the defendant asserted a clear possessory interest in his backpack by clutching it in his lap." *Id*. at 214. In the instant case, by contrast, defendant does not claim that the bags were his, such that he would have standing to challenge the search. Instead, he argues only that the officer's information that the car was stolen was incorrect, but without factual support for this contention. Therefore, defendant has not shown that he had standing to challenge the searches of the plastic bag and the duffel bag. Accordingly, the trial court did not err by denying defendant's motion to suppress.

Defendant's related claim of ineffective assistance of counsel also fails. To the extent that defendant argues that counsel should have obtained information about whether the car was stolen, the success of this claim is dependent upon a factual showing that the car was not actually stolen. Defendant has not presented, by affidavit or otherwise, factual support for his assertion that the car had either not been reported stolen or was not stolen. Accordingly, defendant has failed to establish the predicate facts necessary to support his claim. *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999) ("[D]efendant has the burden of establishing the factual predicate for his claim of ineffective assistance of counsel[.]").

## II. EXCLUSION OF TESTIMONY AND WITNESSES

Defendant also contends that the trial court violated his right to a fair trial when the court denied him the right to call witnesses and "present a defense to show the process issued against him was flawed and denied him the right to show a pretextual stop which the jury should have considered." We disagree.

On the first day of trial, the prosecutor moved to quash the subpoenas defendant had issued to the assistant prosecutor who signed, and thus, authorized the complaint, and Deputy Trent Harrison who swore to the complaint, who was listed as the complaining witness thereon, and who played no role in the investigation.[6] Defense counsel sought to call the witnesses to establish that Deputy Harrison "was not a legally sufficient person to do the swear-to, and[, therefore,] the

---

[6] At trial, Deputy Jonte Slack testified that he did not recall Deputy Harrison being at the scene. But, contrary to defendant's suggestion, the magistrate properly issued the felony complaint. See MCL 764.1a; MCL 764.1c.

warrant should have been denied." The trial court granted the prosecutor's motion to quash the subpoenas, determining that the proposed witnesses could not offer any relevant evidence pertaining to the charges.[7]

Thereafter, the prosecutor stated that the legal issues relating to Counts 5 and 6, the stop and the search of the vehicle, and the defendant's arrest were not in issue during the trial. The court inquired whether the prosecutor was asking that any testimony regarding those matters be precluded, and the prosecutor affirmed he was. The trial court precluded the testimony and defense counsel stated that he would "try to avoid those."

Nevertheless, during the trial, Deputy Olson testified about the vehicle's unilluminated license plate and explained that the reason for the stop was to follow up on the LEIN information that the vehicle was stolen. The jury also asked several questions pertaining to the vehicle stop. In response to one such question, it was revealed that the vehicle was stolen on February 5, 2019.[8] And, in response to a separate jury question regarding the failure to illuminate the license plate, the trial court explained the question was not relevant because the vehicle "was stopped because [it was] reported stolen." Subsequent inquiry of an LPD officer revealed that he was advised that the vehicle was reported stolen. But, when defense counsel inquired why defendant was never charged criminally, the trial court sustained the prosecutor's objection with the prosecutor interjecting that trial counsel knew that defendant was charged. Defense counsel then withdrew the question.

Defendant failed to object on constitutional grounds below. *People v Solloway*, 316 Mich App 174, 197; 891 NW2d 255 (2016). Therefore, our "review is limited to plain error affecting defendant's substantial rights." *Id*. To obtain relief, defendant must show that an error occurred, that it was plain or obvious, and that it affected his substantial rights. *Id*. "To be entitled to reversal, [] defendant must show that the error resulted in the conviction of an actually innocent defendant or that the error substantially affected the fairness, integrity, or public reputation of judicial proceedings." *Id*. (quotation marks, brackets, and citation omitted).

"A criminal defendant has a due process right to present a defense under the state and federal Constitutions." *Solloway*, 316 Mich App at 198. And a defendant has a constitutional right to call witnesses in his defense. US Const, Am VI; Const 1963, art 1, § 20. "But the right to present a defense is not absolute." *Solloway*, 316 Mich App at 198. See also *People v Yost*, 278 Mich App 341, 379; 749 NW2d 753 (2008). The defendant, however, must comply with established procedural and evidentiary rules designed to assure fairness and reliability. *Solloway*, 316 Mich App at 198; *Yost*, 278 Mich App 379. Consequently, "the right to present a defense extends only to relevant and admissible evidence." *Solloway*, 316 Mich App at 198 (quotation marks and citation omitted).

---

[7] At defendant's request, trial counsel later objected to striking the subpoena as to Harrison and the assistant prosecutor. The court remained unpersuaded.

[8] An LPD officer later confirmed this date.

-6-

Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401. A trial court may exclude relevant evidence if "its probative value is substantially outweighed by the danger or unfair prejudice, confusion of the issues, or misleading the jury, or by consideration of undue delay, waste of time, or needless presentation of cumulative evidence." MRE 403. A trial court's decision to admit or exclude evidence is reviewed for an abuse of discretion. *People v Burger*, 331 Mich App 504, 510; 953 NW2d 424 (2020). An abuse of discretion occurs when the trial court's decision falls outside the range of principled outcomes. *Id*.

To the extent that defendant wanted to question Deputy Olson or others about the legality of the traffic stop and search of the vehicle, or defendant's arrest, these issues involved questions of law that were not within the purview of the jury, but were for the court to determine. *People v Artman*, 218 Mich App 236, 239; 553 NW2d 673 (1996); see also *People v Chowdhury*, 285 Mich App 509, 514; 775 NW2d 845 (2009) ("the ultimate question whether evidence should be suppressed is an issue of law for the court"). For example, in *People v Dungey*, 235 Mich 144, 145; 209 NW 57 (1926), the defendant moved to suppress evidence before trial. He claimed that the warrantless search of his automobile was improper. *Id*. at 145. His motion was accompanied by his affidavit averring that he was alone in the vehicle and had not been doing anything wrong. *Id*. The prosecutor filed a response which was accompanied by an affidavit from the deputy sheriff outlining the grounds for the stop, arrest, and search. *Id*. at 145-146. The trial court denied the defendant's motion to suppress. *Id*. at 146. Our Supreme Court held that by denying the motion to suppress, the trial court found the officer's affidavit true as a matter of fact. *Id*. The Court stated that this precluded any "further questioning on this subject at any future stage in the trial" and that the only question the jury had to determine was whether or not the defendant was in possession of the contraband contrary to law. *Id*. The Court further stated that issues involving the legality of the stop were not the "subject of inquiry" at trial and that the defendant could not complain that he was not allowed to question witnesses about them. *Id*. at 146-147. The Court stated:

> These matters were for the consideration of the court on the hearing of the motion to suppress, on which hearing defendant had the right to go into them and produce witnesses to substantiate his claim in regard thereto. Whether evidence should be suppressed or received is for the court, and not for the jury. [*Id*.]

Like the defendant in *Dungey*, defendant complains that he was not permitted to question the officer at trial about the legality of the stop and search of the vehicle. However, as the Court explained in *Dungey*, these were not issues for the jury to decide at trial, but were for the trial court to decide at a suppression hearing. Defendant filed a pretrial motion to suppress the evidence in this case and the trial court conducted an evidentiary hearing on the issue where defendant had the opportunity to cross-examine Deputy Olson and present evidence. Consistent with *Dungey*, the trial court properly precluded further questioning at trial regarding the legality of the traffic stop and search of the vehicle. These questions of law were not within the jury's purview. Although defendant argues that the stop may have been pretextual, this question was explored at the suppression hearing. Accordingly, defendant has not established error, let alone plain error, in the trial court's preclusion of evidence related to the *legality* of the stop and search of the vehicle.

-7-

Indeed, the testimony presented at trial was that regardless of the license plate illumination, Deputy Olson properly stopped the vehicle based on LEIN information that it was stolen.

The same rationale applies to the trial court's decision to quash the subpoenas directed at Deputy Harrison and the assistant prosecutor who performed functions related to the issuance of the complaint. Whether defendant was properly before the circuit court was a legal question for the court to determine and it was wholly unrelated to the factual issues to be determined by the jury as to the charged crimes. The trial court did not deprive defendant of his ability to present a defense by precluding him from calling either witness.

## III. MERE PRESENCE JURY INSTRUCTION

Defendant next argues that the trial court erred by denying his request for the "mere presence" jury instruction in M Crim JI 8.5. We disagree.

"Claims of instructional error are generally reviewed de novo by this Court, but the trial court's determination that a jury instruction is applicable to the facts of the case is reviewed for an abuse of discretion." *People v Dobek*, 274 Mich App 58, 82; 732 2W2d 546 (2007). Due process requires that the trial court "properly instruct the jury so that it may correctly and intelligently decide the case." *People v Clark*, 453 Mich 572, 583; 556 NW2d 820 (1996) (citations omitted). In *People v Wade*, 283 Mich App 462, 464; 771 NW2d 447 (2009), this Court explained:

> Jury instructions are to be read as a whole rather than extracted piecemeal to establish error. And even if somewhat imperfect, instructions do not create error if they fairly presented the issues to be tried and sufficiently protected the defendant's rights.

Reversal for failure to give an instruction is required "only if the requested instruction: (1) is substantially correct; (2) was not substantially covered in the charge given to the jury; and (3) concerns an important point in the trial so that the failure to give it seriously impaired the defendant's ability to effectively present a given defense." *People v Moldenhauer*, 210 Mich App 158, 159; 533 NW2d 9 (1995).

Defendant requested the "mere presence" instruction in M Crim JI 8.5, which provides that "[e]ven if the defendant knew that the alleged crime was planned or was being committed, the mere fact that [he / she] was present when it was committed is not enough to prove that [he / she] assisted in committing it." This instruction did not fit the facts of this case, even though defendant's defense was that he was present in the vehicle where the gun and drugs were found, but did not know they were present in the car. The instruction is intended in situations involving accomplice liability and the prosecution is proceeding under an aiding or abetting theory. See *People v Norris*, 236 Mich App 411, 419-420; 600 NW2d 658 (1999) ("[m]ere presence, even with knowledge that an offense is about to be committed or is being committed, is insufficient to establish that a defendant aided or assisted in the commission of the crime"). Indeed, Chapter 8 of the model criminal jury instructions is titled, "Aiding and Abetting and Accessory after the Fact." In this case, the prosecution never argued that defendant was involved with someone else in committing the charged crimes and was guilty under an aiding or abetting theory. Defendant is correct that a similar instruction may be appropriate when a defendant is charged with constructive

possession of contraband.  See *People v Echavarria*, 233 Mich App 356, 370; 592 NW2d 737 (1999) (observing that "[a] person's presence, by itself, at a location where drugs are found is insufficient to prove constructive possession" and that "some additional connection between the defendant and the contraband must be shown").  However, this is addressed in M Crim JI 12.7, which discusses the concept of possession as follows:

> Possession does not necessarily mean ownership.  Possession means that either:
>
> (1) the person has actual physical control of the [substance / thing], as I do with the pen I'm now holding, or
>
> (2) the person has the right to control the [substance / thing], even though it is in a different room or place.
>
> Possession may be sole, where one person alone possesses the [substance / thing].
>
> Possession may be joint, where two or more people each share possession.
>
> It is not enough if the defendant merely knew about the [state substance or thing]; the defendant possessed the [state substance or thing] only if [he / she] had control of it or the right to control it, either alone or together with someone else.

The use note for M Crim JI 12.7 provides that "[i]n felony firearm cases, see M Crim JI 11.34b for the applicable definition of constructive possession."  M Crim JI 11.34b provides:

> Possession does not necessarily mean ownership.  Possession means that either:
>
> (1) the person has actual physical control of the thing as I do with the pen I am now holding, or
>
> (2) the person *knows the location of the firearm and has reasonable access to it*.
>
> Possession may be sole where one person alone possesses the firearm.  Possession may be joint where two or more people share possession.  [Emphasis added.]

In the instant case, defendant was not charged as an aider or abettor.  Thus, the trial court did not abuse its discretion by determining that the mere presence instruction in M Crim JI 8.5 was not applicable.  Defendant's defense was that he did not know that the controlled substances or firearm were in the car.  In its instructions, however, when discussing the charge of possession with intent to deliver, the trial court instructed the jury: "It is not enough that Defendant merely knew about the substance.  The Defendant possessed the substance only if he had control of it, or the right to control it either alone or together with someone else."  The court provided similar instructions for the felon-in-possession charge, instructing the jury that possession required a finding of actual possession or that defendant "knows the location of the firearm and has

reasonable access to it." Likewise, during its instructions for the CCW charge, the court instructed the jury that, among other requirements, it must find that defendant "knew the pistol was there." The court also instructed the jury that to convict defendant of the firearm charges, it must find that defendant "knowingly possessed a firearm in this state." These instructions adequately covered defendant's defense of lack of knowledge that the drugs or firearm were in the car when he borrowed it from his girlfriend. As a whole, the instructions "fairly presented the issues to be tried and sufficiently protected the defendant's rights." *Wade*, 283 Mich App at 463.

Moreover, defense counsel admitted at trial that the heroin found on defendant's person at the hospital was packaged similarly to the heroin found in the car. Counsel also stated that defendant was not challenging the evidence with respect to the drugs found on defendant's person. Considering these concessions, it is highly unlikely that the jury's decision would have changed had the trial court provided the mere presence instruction in addition to the ones it provided. Thus, defendant cannot demonstrate that the trial court's decision "seriously impaired the defendant's ability to effectively present a given defense." *Moldenhauer*, 210 Mich App at 160.

## IV. DIRECTED VERDICT

Defendant next argues that the trial court erred by denying his motion for a directed verdict with respect to the firearm charges and the charge of possession with intent to deliver methamphetamine. Specifically, he argues that the evidence was insufficient to show that he possessed the duffel bag in which the methamphetamines and handgun were found, and the evidence also failed to support a finding that there was an intent to deliver the methamphetamine. We disagree.

"When reviewing a trial court's decision on a motion for a directed verdict, this Court reviews the record de novo to determine whether the evidence presented by the prosecutor, viewed in the light most favorable to the prosecutor, could persuade a rational trier of fact that the essential elements of the crime charged were proved beyond a reasonable doubt." *People v Aldrich*, 246 Mich App 101, 122; 631 NW2d 67 (2001). Reasonable inferences drawn from circumstantial evidence may constitute proof of the essential elements of a crime sufficient to overcome a motion for directed verdict. *People v Peña*, 224 Mich App 650, 659; 569 NW2d 871 (1997), mod in part 457 Mich 885 (1998).

Possession of narcotics or a firearm can be actual or constructive. *People v Wolfe*, 440 Mich 508, 520; 489 NW2d 748 (1992), amended 441 Mich 1201 (1992); *People v Hill*, 433 Mich 464, 470; 446 NW2d 140 (1989). To demonstrate constructive possession of a controlled substance, the prosecution must establish that the defendant "had the right to exercise control of the [substance] and knew that it was present." *Wolfe*, 440 Mich at 520 (quotation marks and citation omitted). In *Hill*, the Court stated that constructive possession of a firearm may be established "if the location of the weapon is known and it is reasonably accessible to the defendant." *Hill*, 433 Mich at 471. As observed in *Wolfe*, 440 Mich at 521:

> We have stated that constructive possession may be demonstrated by direct or circumstantial evidence that the defendant had the power to dispose of the drug, or "the ability to produce the drug . . . ," or that the defendant had the "exclusive control or dominion over property on which narcotics are found . . . ." Constructive

possession may also be proven by the defendant's participation in a "joint venture" to possess a controlled substance. The ultimate question is whether, viewing the evidence in a light most favorable to the government, the evidence establishes a sufficient connection between the defendant and the contraband to support the inference that the defendant exercised a dominion and control over the substance. [Citation omitted.]

In the instant case, defendant was the sole occupant of the vehicle. He thus had exclusive dominion and control of the property where the narcotics and handgun were found. Although the defense theory was that the car belonged to defendant's girlfriend, the evidence showed that the duffel bag in which the firearm and methamphetamine were found was in defendant's plain view and reach and contained male clothing. These facts supported an inference that the duffel bag belonged to defendant. Also, the heroin packages found on defendant's person were packaged in lottery tickets in the same manner as the bindles found in the automobile. In the same bag with the heroin bindles, the officers also found cut-up lottery tickets, baggies, a scale, a spoon, a plate, and cutting agents. Deputy Olson testified that the items in the bags were designed to prepare the drugs for distribution. He formed this opinion on the basis that defendant had heroin in bags and bindles, methamphetamine, cutting agents, a scale, and other paper bindles waiting to be used. Given this testimony and evidence, a rational jury reasonably could find beyond a reasonable doubt that defendant possessed the firearm and methamphetamine, and intended to sell the methamphetamine. Therefore, the trial court did not err by denying defendant's motion for a directed verdict.

## V. MOTION TO QUASH AMENDED INFORMATION

In related issues, defendant argues through both appellate counsel and in his Standard 4 brief that the trial court erred by permitting the prosecution to amend the information to add Counts 5 and 6 relating to the heroin and cocaine found on defendant's person at the hospital without remanding the case to district court for a preliminary examination on the new charges. Defendant raised this issue in a motion to quash, which the trial court denied.

"This Court reviews for an abuse of discretion a trial court's decision to grant or deny a motion to amend an information." *People v Perry*, 317 Mich App 589, 594; 895 NW2d 216 (2016). Likewise, a trial court's decision on a motion to quash is reviewed for an abuse of discretion. *People v Bass*, 317 Mich App 241, 279; 893 NW2d 140 (2016). "The trial court abuses its discretion when its decision falls outside the range of principled outcomes." *Perry*, 317 Mich App at 594. But "to the extent that a lower court's decision on a motion to quash the information is based on an interpretation of the law, appellate review of the interpretation is de novo." *Bass*, 317 Mich App at 279 (quotation marks and citation omitted).

Defendant first argues that MCL 767.76, which allows amendment of an information at any time before, during, or after trial to cure "any defect, imperfection or omission in form or substance or of any variance with the evidence," was not applicable to permit the second amended information because it added new charges. However, MCR 6.112(H) provides:

> The court before, during, or after trial may permit the prosecutor to amend the information . . . unless the proposed amendment would unfairly surprise or

prejudice the defendant. On motion, the court must strike unnecessary allegations from the information.

Our Supreme Court has held that MCR 6.112(H) supersedes MCL 767.76, because the court rule involves a matter of procedure. *People v Goecke*, 457 Mich 442, 460 & n 18; 579 NW2d 868 (1998); see also *People v McGee*, 258 Mich App 683, 689, 694-695; 672 NW2d 191 (2003). Moreover, in *McGee*, 258 Mich App at 695-697, this Court held that the court rule trumps MCL 767.76 even when there was no initial preliminary examination on a new charge.[9]

Defendant now argues that the amendment was also prohibited by MCL 767.42(1), which provides that "[a]n information shall not be filed against any person for a felony until such person has had a preliminary examination therefor, as provided by law, before an examining magistrate, unless that person waives his statutory right to an examination." This statute does not help defendant. Preliminarily, because defendant waived his right to an initial preliminary examination, it is questionable whether this statute even applies. In any event, the statute cannot be used to deny amendment of an information because that would run afoul of MCR 6.112(H). Because the court rule is one of procedure, the court rule supersedes this statute as well.

The "only legal obstacle to amending the information" to add a new charge is "whether the amendment would cause undue prejudice to the defendant because of unfair surprise, inadequate notice, or insufficient opportunity to defend." *McGee*, 258 Mich App at 690. For example, a defendant may establish unfair surprise by articulating how additional time to prepare would have benefited the defense. *Perry*, 317 Mich App at 594. In the instant case, defendant fails to explain how he was prejudiced by the addition of Counts 5 and 6 in the second amended information. The new charges resulted from substances that were found in defendant's possession at the hospital, and because the second amended information was filed in August 2019, defendant had more than a year to prepare to defend against the charges. There was no unfair surprise or prejudice.

To the extent that defendant argues that the trial court did not have jurisdiction over Counts 5 and 6, he is mistaken. In *McGee*, 258 Mich App at 693-697, this Court held that the defendant's right to a preliminary examination was not violated when the trial court allowed the prosecutor to add a charge of perjury on the first day of trial. This Court stated:

Here, it is undisputed that defendant waived her right to a preliminary examination regarding the charge of making a false police report of a felony, MCL 750.411a(1)(b). Upon filing of the return by the magistrate, the prosecutor was authorized to file an information and the circuit court obtained jurisdiction over defendant and the case. Had no return been filed, the circuit court would not have acquired jurisdiction over the case or the accused. Having acquired jurisdiction over defendant and the case, MCR 6.112(H) authorized the circuit court to amend the information before, during, or after trial unless the proposed amendment would

---

[9] This Court further explained that even if the trial court had "erred by amending the information in violation of [the] defendant's statutory right to a preliminary examination, the error was harmless." *McGee*, 258 Mich App at 697-699.

unfairly surprise or prejudice the defendant.  [*Id.* at 696 (quotations and citations omitted).]

In its analysis, this Court noted that in *People v Monick*, 283 Mich 195, 199; 277 NW 883 (1938), our Supreme Court had held that a circuit court's jurisdiction is limited to the crimes included in the magistrate's return, but since then the Supreme Court had held that a circuit court has jurisdiction to amend an information to reinstate charges that the magistrate dismissed.  *McGee*, 258 Mich App at 694.  This Court concluded that although preliminary examination testimony supported the added charge in the Supreme Court case, "a logical extension" of that case permitted the amendment despite the lack of a preliminary examination.  *Id.*  This Court's analysis and holding in *McGee* refutes defendant's claims that the second amended information denied him his right to a preliminary examination and that the trial court did not have jurisdiction over Counts 5 and 6.

In a supplemental Standard 4 brief, defendant also appears to argue that he is entitled to relief because he was not provided with a prompt probable-cause hearing within 48 hours after his "arrest without a warrant" for the charges in Counts 5 and 6.  Defendant relies on cases such as *Co of Riverside v McLaughlin*, 500 US 44; 111 S Ct 1661; 114 L Ed 2d 49 (1991), in which the Supreme Court discussed whether the County of Riverside violated the Fourth Amendment by failing to provide prompt judicial determinations of probable cause to persons arrested without a warrant.  The Court in turn discussed *Gerstein v Pugh*, 420 US 103; 95 S Ct 854, 43 L Ed 2d 54 (1975), which is also cited by defendant.  In both cases, however, the question involved whether the defendant's initial detention was unlawful without a prompt probable-cause determination.  As discussed in *McLaughlin*, 500 US at 52:

> In *Gerstein*, this Court held unconstitutional Florida procedures under which persons arrested without a warrant could remain in police custody for 30 days or more without a judicial determination of probable cause.  In reaching this conclusion we attempted to reconcile important competing interests.  On the one hand, States have a strong interest in protecting public safety by taking into custody those persons who are reasonably suspected of having engaged in criminal activity, even where there has been no opportunity for a prior judicial determination of probable cause.  420 US at 112.  On the other hand, prolonged detention based on incorrect or unfounded suspicion may unjustly "imperil [a] suspect's job, interrupt his source of income, and impair his family relationships."  *Id.*, at 114.  We sought to balance these competing concerns by holding that States "must provide a fair and reliable determination of probable cause as a condition for any significant pretrial restraint of liberty, and this determination must be made by a judicial officer either before *or promptly after arrest*."  *Id*. at 125 (emphasis added).

In *McLaughlin*, the Court discussed what constitutes a "prompt" judicial determination of probable cause following an arrest.  Riverside County had combined probable-cause determinations with its arraignment procedures and, as a result of its decision not to include weekends and holidays in its 48-hour window to provide the probable-cause hearing, the Court observed that those arrested without a warrant "late in the week may in some cases be held for as long as five days before receiving a probable cause determination.  Over the Thanksgiving holiday, a 7-day delay is possible."  *McLaughlin*, 500 US at 47.  In addition, information was presented that some inmates

were required to wait 10 days before the initial probable-cause determination. *Id*. at 47-48. The Court held that a delay of more than 48 hours between a warrantless arrest and a probable-cause determination was an unreasonable delay under the Fourth Amendment. *Id*. at 56-57.

In contrast to the arrested individuals in *McLaughlin* and *Gerstein*, defendant was provided with a prompt initial opportunity for an arraignment and a preliminary examination, but apparently declined to avail himself of either procedure. Defendant has not shown that the late addition of Counts 5 and 6 runs afoul of *McLaughlin*. Unlike charges following an initial arrest, adding additional charges does not have the same effect on the defendant that it would "unjustly imperil a suspect's job, interrupt his source of income, and impair his family relationships." *Id*. at 52 (quotation omitted). Defendant's reliance on *McLaughlin* and *Gerstein* is not persuasive.

In sum, defendant has not shown that he is entitled to relief because the trial court permitted the prosecution to amend the information to add Counts 5 and 6 relating to the controlled substances found in defendant's possession at the hospital.

## VI. QUALIFICATION OF EXPERT WITNESS

Defendant argues that the trial court erred by allowing Deputy Olson to provide expert testimony regarding street-level drug trafficking. Generally, "the determination regarding the qualification of an expert and the admissibility of expert testimony is within the trial court's discretion." *People v Murray*, 234 Mich App 46, 52; 593 NW2d 690 (1999). Although defendant now argues that Deputy Olson should not have been permitted to offer expert testimony under MRE 702, defendant did not object when the prosecutor moved to have Deputy Olson so qualified at trial. Thus, the issue was not preserved at trial. Defendant, however, filed a motion for new trial, raising this question along with an ineffective assistance of counsel claim. After briefing and argument, the trial court denied defendant's motion.

Contrary to defendant's arguments, this Court has repeatedly held that police officers may testify as experts in street-level drug trafficking, including by providing drug-profile testimony, subject to limitations. "Drug profile evidence has been described as an informal compilation of characteristics often displayed by those trafficking in drugs." *Murray*, 234 Mich App at 52 (quotation marks and citations omitted). A drug profile is an investigative technique in which law enforcement officers list characteristics that, in the officer's opinion, are typical of a person engaged in a specific illegal activity. *Id*. Examples include "the use of pagers, the carrying of large amounts of cash, and the possession of razor blades and lighters in order to package crack cocaine for sale," *id*. at 52-53, similar to the use of the spoon, scale, or the lottery tickets in the instant case. Such testimony is admissible "to assist the jury as background or modus operandi explanation." *Id*. at 56. However, because drug-profile evidence "may suggest that innocuous events indicate criminal activity," it is "inherently prejudicial" and is not admissible as substantive evidence of a defendant's guilt. *Id*. at 53. Drug-profile evidence is therefore only admissible for limited purposes. *Id*. at 56. As explained in *Murray*, 234 Mich App 53-54:

> [C]ourts generally have allowed expert testimony to explain the significance of items seized and the circumstances obtaining during the investigation of criminal activity. [*People v Hubbard*, 209 Mich App 234, 239, 530 NW2d 130 (1995)]; MRE 702. *Even more specifically, this Court has held that a prosecutor may use*

-14-

*expert testimony from police officers to aid the jury in understanding evidence in controlled substance cases*. *People v Ray*, 191 Mich App 706, 707; 479 NW2d 1 (1991). For such expert testimony to be admissible, "(1) the expert must be qualified; (2) the evidence must serve to give the trier of fact a better understanding of the evidence or assist in determining a fact in issue; and (3) the evidence must be from a recognized discipline." *People v Williams (After Remand)*, 198 Mich App 537, 541; 499 NW2d 404 (1993). For example, in *Ray*, *supra* at 708, this Court determined that a police officer properly offered expert testimony that the quantity of crack cocaine, and the way the rocks of crack cocaine were evenly cut, clearly indicated that the defendant intended to sell the drugs. Even where a police officer expert witness' testimony is "founded solely on observations of innocent conduct," courts have upheld admission of the expert's opinion that the "defendant's activities indicated that he acted in accordance with usual criminal modus operandi." *United States v Espinosa*, 827 F2d 604, 612 (CA 9, 1987). "For that very reason, the expert testimony may be valuable to the jury." *Id*. However, when the testimony at issue is a drug profile, the expert may not move beyond an explanation of the typical characteristics of drug dealing—in an effort to provide context for the jury in assessing an alleged episode of drug dealing—and opine that the defendant is guilty merely because he fits the drug profile. Such testimony is inherently prejudicial and constitutes an inappropriate use of the profile as substantive evidence of guilt. See [*United States v Lui*, 941 F2d 844, 847 (CA 9, 1991).] [Emphasis added; footnotes omitted.]

In the instant case, defendant does not argue that any of the specific testimony that Deputy Olson provided crossed the line of admissibility. He does not argue that Deputy Olson was not personally qualified to testify, through lack of experience, for example. He argues only that there is no "recognized discipline" as to street-level narcotics trafficking, and there are no "reliable principles and methods" supporting such testimony. However, defendant provides no caselaw or other support for his assertion. In contrast, this Court has specifically held that such expert testimony is admissible, with limitations. Defendant has not established any error, let alone an abuse of discretion, in permitting Deputy Olson to testify as an expert in street-level narcotics trafficking.

Defendant's related ineffective-assistance claim also fails. Given the substance of defendant's arguments and his failure to demonstrate that Deputy Olson's testimony was inadmissible, he cannot show that counsel's failure to object was objectively unreasonable. *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010) ("Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel."). Moreover, because defendant has not demonstrated that any objection would have been successful, he has not demonstrated that he was prejudiced by counsel's failure to object.

Affirmed.

/s/ Anica Letica
/s/ Jane E. Markey
/s/ Colleen A. O'Brien